Manuel ESTRADA and Lear Lines, Inc., Appellants,

v.

Dennis DILLON and CNA Insurance Company, Appellees.

No. 07–99–0059–CV.

Court of Appeals of Texas, Amarillo.

March 21, 2000.

Schell Beene Vaughan & Quillin LLP, R. Michael Beene, Philip T. Kingston, Dallas, for appellants.

Craig Terrill & Hale LLP, Eric G. Walraven, David N. Getz, Lubbock, for appellees.

Before QUINN and REAVIS and JOHNSON, JJ.

DON H. REAVIS, Justice.

Appellants Manuel Estrada and Lear Lines, Inc. (Lear Lines) appeal from a judgment following a jury trial that Dennis Dillon and CNA Insurance Companies recover $75,897.52, plus 50% of the taxable court costs and interest as provided therein, of and from Lear Lines, after the trial court's partial granting of a motion to disregard jury findings. By a sole issue, Lear Lines contends the trial court erred in granting the motion to disregard jury findings and entering its own award of damages. Dillon and CNA cross-appeal, and by five issues contend the jury failed to award them any recovery for (1) past and future physical impairment; (2) past and future physical pain and mental anguish; and (3) future medical expenses. Based upon the rationale expressed herein, we reverse the judgment of the trial court.

On March 29, 1993, on Interstate 27 in Lubbock, a Lear Lines tractor trailer rig driven by Manuel Estrada was slowing down to pull over and stop after colliding with a small truck, when it was struck in the rear by another truck being driven by Dennis Dillon. Because none of the parties present any issues contesting liability, the details of the accident are not necessary for the disposition of this appeal. Following the accident, Dillon was trapped in his truck and the jaws of life were used to cut him out of the truck, after which he was transported to the hospital by ambulance. Due to severe lacerations to his knees, Dillon was unable to move either knee.

According to Dillon's testimony, an examination in the emergency room by Dr. Robert Carr, an orthopedic surgeon, revealed that Dillon suffered 12 fractures of his right femur; a torn posterior cruciate ligament under his left leg; five broken ribs; two cracks in his pelvis; numerous shattered or cracked teeth; and bruises on his sternum and arm. Doctor Carr testi-fied the injuries were consistent with injuries sustained in an automobile accident, and based on his examination and the patient's history, he saw no evidence of any prior injuries. Dillon also had open lacerations on his left knee, his right knee past the joint, and the distal femur. Also, because Dillon's injuries were open wounds with a higher potential for contamination and infection, he was taken to surgery on the day of the accident. Dillon's right knee had an open fracture that extended all the way down the joint and the bone to the distal femur. In addition, the outside of the bone was split and fractured into multiple fragments and the cartilage in the kneecap was softened due to the high force of impact. The injuries required the use of a Dramatic Compression Screw (DCS plate) on Dillon's right leg to pull together the bone fragments that had been split apart. A large plate, wires, and screws were used to secure the broken part of the bone to the normal part. After surgery the bone was restored, but there was still damage to the articular cartilage, which, according to Dr. Carr, has very little potential to heal itself. Dillon was placed in intensive care for two to three days. Within five or six weeks, Dillon's ribs and bruises healed. Two months after the surgery the cuts on Dillon's knees healed, and in time, his pelvic fractures healed.

Dillon continued to experience pain and in July 1993, an x-ray revealed some bone spur formation in his right knee. There was also a question on whether his fracture had healed completely, prompting surgery on July 15. The procedure required taking bone from his pelvis for a bone graft, which was secured with new screws and fixation plates. Bone spurs in the kneecap were also removed during surgery. After the surgery, Dillon used crutches to keep weight off of his newly grafted bone and commenced physical therapy. When the right knee and leg had healed sufficiently to give Dillon "a good

leg to stand on," surgery was performed on his left knee in November 1993 to correct a posterior cruciate ligament injury. Then, in December 1996, a follow-up surgery was necessary to remove a screw which was causing irritation and to manipulate scar tissue around the kneecap. According to Dr. Carr's testimony, Dillon will always have softened scar tissue cartilage in his knee joint, permanent loss of motion, and arthritis-type discomfort in his knee. His left knee is now weaker than before because it overcompensates for his right leg, causing it to be weak and painful.

After Dillon filed suit, and Lear Lines answered, CNA Insurance Companies, the worker's compensation carrier for Dillon's employer, filed its third amended plea in intervention asserting subrogation rights in the amount of $129,905.07, as of the date of the amended pleading. Following presentation of the evidence and a charge conference, the trial court submitted three questions with subparts to the jury. By answers to questions one and two, the jury found that the negligence of both Lear Lines and Dillon proximately caused the occurrence in question, and the jury attributed 50% negligence to each party. By answers to question three which contained ten subparts,[1] the jury awarded Dillon $1,000 as damages for past physical pain and mental anguish; $1,500 for loss of earning capacity in the past; and $47,000 for past medical care expenses; otherwise, the jury did not award Dillon any damages for future physical pain and mental anguish, future medical care, loss of earning capacity in the future, past and future physical impairment, and past and future disfigurement.

By motion to disregard jury findings and for entry of judgment, Dillon and CNA contended the jury findings to questions 3(C), 3(D), and 3(E) were contrary to the uncontroverted evidence and moved that the court award $149,295.03 for past medical expenses, $81,000 for future medical care, and $22,000 for loss of earning capacity in the past. Following a hearing on the motion to disregard jury findings, the trial court partially granted the motion regarding medical expenses and awarded $149,295.03 for past medical expenses instead of $47,000, but otherwise denied the motion and rendered judgment accordingly. Then, Dillon and CNA each filed their motions for new trial. As material here, by their motions, Dillon and CNA contended that the jury's answers to questions 3A,

1. *QUESTION NUMBER 3*
   What sum of money, if paid now in cash, would fairly and reasonably compensate the Plaintiff for his injuries, if any, that resulted from the occurrence in question?
   Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest in any amount of damages you find.
   3A: Physical pain and mental anguish sustained in the past.
   ANSWER:        $1,000
   3B: Physical pain and mental anguish that, in reasonable probability, Dennis Dillon will sustain in the future.
   ANSWER:        –0–
   3C: Medical care expenses in the past.
   ANSWER:        $47,000
   3D: Medical care that, in reasonable probability, Dennis Dillon will incur in the future.
   ANSWER:        –0–
   3E: Loss of earning capacity sustained in the past.
   ANSWER:        $1500
   3F: Loss of earning capacity that, in reasonable probability, Dennis Dillon will sustain in the future.
   ANSWER:        –0–
   3G: Physical impairments sustained in the past.
   ANSWER:        –0–
   3H: Physical impairment that, in reasonable probability, Dennis Dillon will sustain in the future.
   ANSWER:        –0–
   3I: Disfigurement sustained in the past.
   ANSWER:        –0–
   3J: Disfigurement that, in reasonable probability, Dennis Dillon will sustain in the future.
   ANSWER:        –0–

3B, 3D, 3E, 3F, 3G, 3H, 3I, and 3J were contrary to the overwhelming weight of the evidence and that the jury findings were against the great weight and preponderance of the evidence. The motions for new trial were overruled by operation of law.

By its sole issue, Lear Lines contends the trial court erred in partially granting Dillon's motion to disregard the jury's answer regarding past medical expenses. Dillon and CNA present five issues by their cross-appeal. By issue one, they contend it was error for the jury to award zero damages for past physical impairment (Question 3G) and by issue two, contend it was error for the jury to award only $1,000 damages for past physical pain and mental anguish because the amount of the award is tantamount to zero damages (Question 3A). By issues three, four, and five, Dillon and CNA contend the jury findings of no damages for future pain and mental anguish (Question 3B), future medical care (Question 3D), and future physical impairment (Question 3H) are against the great weight and preponderance of the evidence. In our analysis, we first consider the issues presented by Dillon and CNA.

Although presented here as "zero damages" issues, by motions for new trial, as required by Rules 320 and 324(b)(3) of the Texas Rules of Civil Procedure, Dillon and CNA asserted the jury findings of zero damages were against the overwhelming weight of the evidence, and by their brief, Dillon and CNA argue that because the answers given by the jury are against the great weight and preponderance of the evidence, Dillon is entitled to a new trial on damages.[2]

Because Dillon's injuries are set out in considerable detail above, it is not necessary to restate the findings of his surgeon

following the accident and the medical care which followed. Dillon, a married man with two young children, was 37 years of age at the time of the accident. In summary, the evidence revealed that Dillon required 23 days of hospitalization between March 1993 and December 1993, during which time he had numerous surgeries on his right knee and one surgery on his left knee. Between surgeries, he had difficulty in walking, used crutches on occasions, and also received physical therapy on several occasions. Although he suffered injuries to his ribs and cracked pelvis, surgery was not required for those injuries.

## Standard of Review

■ In *Lowery v. Berry*, 153 Tex. 411, 269 S.W.2d 795 (1954), the Court upheld a decision of the Court of Civil Appeals reversing a judgment that a minor take nothing based on a jury finding of no damages because the undisputed facts disclosed that the minor had suffered damages and accordingly the answer of the jury should be disregarded. Since *Lowery*, the phrase "zero damages rule" has crept into Texas jurisprudence, but like the "parol evidence rule," it is a misnomer. Just as the "parol evidence rule" is not a rule of evidence, but a rule of substantive law, *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958), similarly, the "zero damages rule" is not a rule of damages. Rather, it is a common name for a challenge to negative jury findings as to damages based on the great weight and preponderance of the evidence, which requires the appellate court to follow standard rules in considering the challenge.

■ In reversing a judgment based on jury findings of zero damages for past physical pain and mental anguish, the

---

**2.** *See* Raul Gonzales & Rob Gilbreath, Appellate Review of a Jury's Finding of "Zero Damages," 54 Tex. B.J. 418, 420 (1991).

Dallas Court of Appeals stated the appropriate standard of review in *Monroe v. Grider*, 884 S.W.2d 811, 820 (Tex.App.—Dallas 1994, writ denied). In our analysis, we are to consider all of the evidence, both favorable and contrary to the findings, and reverse and remand for a new trial only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We are not to reweigh the evidence and set aside the verdict merely because we feel that a different result is more reasonable. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986). The jury is the sole judge of the credibility of the witnesses and the weight given their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury may believe one witness and disbelieve another and resolves inconsistencies in any testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Where the jury has enough evidence upon which reasonable minds could differ, we may not substitute our judgment for that of the jury. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Being mindful that a preponderance of the evidence did not convince the jury where it did not find a fact, we may not reverse merely because we conclude the evidence preponderates toward an affirmative answer. *Id.*

## Applicable Law

■ To sustain the jury's zero finding that Dillon incurred no damages for past physical impairment, the jury must have found by a preponderance of the evidence that no impairment accompanied the injury and the necessary medical care. *Monroe*, 884 S.W.2d at 820; *Hammett v. Zimmerman*, 804 S.W.2d 663, 665 (Tex.App.—Fort Worth 1991, no writ). Moreover, when the uncontroverted evidence shows objective injuries, a jury finding that the

plaintiff suffered no past pain and suffering is against the great weight and preponderance of the evidence. *Monroe*, 884 S.W.2d at 820; *Hammett*, 804 S.W.2d at 664.

## Application of Law to the Facts

■ Dillon and CNA contend the jury's denial of damages for past physical impairment was against the great weight and preponderance of the evidence. We agree. A jury may deny an award of damages when the claimed injuries are subjective. *See Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ). However, Dillon introduced an abundance of evidence which demonstrated that his injuries were objective and even visible to persons without medical training. The evidence of Dillon's injuries and necessary medical treatment was so apparent that it prompted counsel for Lear Lines to comment during his closing argument that "there's no question this is a sympathetic case. It's okay to feel sorry for Mr. Dillon." Lear Lines argues the evidence showed that Dillon went snow skiing, played basketball, and made long car trips on vacation. However, these activities did not happen during 1993, the year Dillon had numerous surgeries, spent 23 days in the hospital, used crutches, received physical therapy, and would not have been relevant to the claims for past physical impairment and past physical pain and mental anguish. Accordingly, we conclude the jury's finding of zero damages for past physical impairment is against the great weight and preponderance of the evidence. We sustain Dillon's first issue.

■ Our sustention of Dillon's first issue pretermits our consideration of his remaining issues, and Lear Lines's sole issue. Tex.R.App. P. 47.1. However, we must now determine whether all issues, including liability must be remanded for a

new trial, or whether remand and a new trial should be limited to damages issues only. Tex.R.App. P. 44.1(b). The damages sought are unliquidated and liability was disputed in the trial court. However, neither party contested liability or apportionment of negligence by way of motion for new trial or on appeal. In *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996), because contested liability was conceded at oral submission on appeal, the Court held that liability as well as damages issues should be remanded for new trial. Here however, Lear Lines does not present an issue or point of error contesting the determination of its liability in the trial court, nor does it present any argument on appeal contesting its liability. Moreover, by its prayer, Tex.R.App. P. 38.1(i), although Lear Lines opposes any remand on the issue of damages, it requests that judgment be entered in accordance with the verdict of the jury or, alternatively, affirm the trial court's judgment *non obstante verdicto*. However, Lear Lines does not clearly request that the question of liability also be remanded in the event any of Dillon's damages issues are sustained.

Accordingly, we reverse the judgment and remand the cause to the trial court for a new trial on all damages issues, but not liability.