**Affirmed and Memorandum Opinion filed April 23, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00073-CV

---

### FRANK HUDSON, Appellant

### V.

### LUTHER FOREST, Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2011-41363**

---

## M E M O R A N D U M   O P I N I O N

Appellant Frank Hudson appeals from a final take-nothing judgment following a jury trial in which the contested issues were the cause and extent of injuries he suffered in a car wreck with appellee Luther Forest. Hudson contends that the evidence regarding the cause of the accident is factually insufficient to support a finding that assigns fifty percent of the responsibility to Hudson. Hudson also argues that the evidence is factually insufficient to support an award of zero

damages for loss of earning capacity. Because we conclude that the evidence is factually sufficient to support the award of zero damages, we affirm the trial court's judgment.

## BACKGROUND

On August 21, 2009, Forest's car struck Hudson's car in a parking lot when Forest backed out of his parking space. At the time of the collision, Hudson was driving through the lot looking for a parking space. Hudson alleged that the low-speed wreck caused him to suffer a traumatic brain injury, which prevented him from being able to work. Hudson filed suit alleging Forest was negligent and caused the accident that resulted in his injuries. The case proceeded to a jury trial in which the disputed issues were the cause and extent of Hudson's alleged personal injuries.

Twenty days before Hudson filed his original petition, an administrative law judge declared that Hudson was disabled under the Social Security Act and eligible to receive Social Security disability benefits. The judge's disability decision concluded that Hudson suffered from lumbar degenerative disc disease, a traumatic brain injury, and psychological impairments. When Hudson filed for disability benefits, he alleged that he had been disabled since the date of the accident with Forest and not prior to that date. The administrative law judge agreed, concluding that Hudson had been disabled, as defined in the Social Security Act, since the date of the collision with Forest. The judge also found that "[m]edical improvement is expected with appropriate treatment." Because of this possible improvement, the administrative law judge recommended that an updated disability review be completed after 36 months.

At trial, Hudson testified about the accident. Hudson stated that he was looking to his right at the time of the collision because he was looking for a

2

parking space. Hudson also testified that if the accident with Forest had not occurred, he would be able to work and would be eligible for retirement after working an additional 15 years with his current employer. Hudson claimed, however, that he would not be able to work during those years due to his disability.

Hudson further testified that he had been involved in numerous accidents prior to 2009. Hudson remembered his involvement in eight car accidents prior to 2009 and that he had complained of back injuries resulting from three of them. Hudson was asked about two additional accidents, but he testified that he could not remember being involved in those accidents. Hudson also testified that a 200-pound carpet fell on him in 1989. The carpet accident caused Hudson to complain of severe headaches and dizziness. Hudson saw numerous doctors as a result of the carpet accident and told them he was unable to work. Several of Hudson's doctors disagreed about Hudson's ability to work, however. Hudson was informed that the carpet accident caused him to suffer "a rotary [sic] cuff tear with a pinched nerve in between . . . ." Hudson testified that the pinched nerve caused the headaches and dizziness he experienced as a result of the carpet accident. Hudson also testified that he suffered a herniated disc in 2002 while lifting weights in a gym.

During Hudson's testimony, he stated that he had applied for Social Security disability benefits prior to the accident with Forest and that he was twice denied benefits.[1] Hudson testified that he was denied because of his age. Hudson also testified, however, that when he was denied the first time because of his age, "[t]hey stated that I did have a traumatic brain injury."

---

[1] Hudson admitted that he had applied for disability benefits a total of three times. Hudson further admitted that his first two applications had been denied. The record does not reveal when the first two applications and denials occurred except that they were before Hudson's third application.

Forest also testified about the accident at trial. Forest testified that he was in a hurry and was not paying attention at the time of the collision with Hudson. Forest went on to testify that the accident was completely his fault and that Hudson should recover for any injuries and lost wages resulting from the accident. Forest did not dispute the amount of Hudson's lost wages or the fact that Hudson was disabled under the Social Security Act.

The trial court submitted issues of negligence, proportionate responsibility, and damages to the jury. The jury found both Forest and Hudson negligent. On the issue of proportionate responsibility, the jury found that Hudson and Forest were each fifty percent responsible for the accident. The jury awarded zero damages to Hudson for physical pain, mental anguish, and loss of earning capacity. The trial court then rendered a take-nothing judgment based on the jury's verdict. This appeal followed.

## ANALYSIS

On appeal, Hudson contends that the evidence is factually insufficient to support the jury's findings on (1) the apportionment of responsibility between Hudson and Forest, and (2) the jury's award of zero damages for loss of earning capacity. Because Hudson's second issue is dispositive, we will address that issue first.

## I.    Standard of review

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party attacks the factual sufficiency of an adverse finding on which it had the burden of

proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When there is no objection to the charge, we measure the sufficiency of the evidence according to the charge submitted to the jury. *Garza v. Cantu*, 431 S.W.3d 96, 103 (Tex. App.–Houston [14th Dist.] 2013, pet. denied). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

We are not a finder of fact. *Ellis*, 971 S.W.2d at 407. Accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would support a different result. *Id*. Instead, the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When presented with conflicting evidence, a jury may believe one witness and disbelieve others, and it also may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986).

## II.     The evidence supporting the jury's finding of zero damages is factually sufficient.

In Hudson's second issue, he contends the evidence is factually insufficient to support the jury's award of zero damages for loss of earning capacity. In making this argument, Hudson points to (1) the amount of his lost wages based on his employer's payroll documents, and (2) the disability decision by the administrative law judge under the Social Security Act.

When only one category of damages is challenged on the basis that the

5

award in that category was zero or was too low, we consider the evidence unique to that category in deciding whether the award is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Golden Eagle Archery*, 116 S.W.3d at 775.[2] The plaintiff has the burden of proving loss of earning capacity. *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex. App.–Houston [14th Dist.] 2002, no pet.). The measure of this type of damage is the plaintiff's diminished earning power or earning capacity, in the past or future, directly resulting from the injuries sustained in the accident. *Id.* To support an award for damages for lost earning capacity, the plaintiff generally must introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury. *Id.* at 435–436. Specific proof of actual earnings and income are evidence of loss of earning capacity. *Id.* at 436.

Hudson contends that evidence of his lost wages supports an award for loss of earning capacity. Hudson introduced evidence of the amount of his earnings and income prior to the accident with Forest, less deductions for child support and retirement. This evidence showed the amount of Hudson's monthly salary and the dates that Hudson missed work beginning in November 2009, following the accident with Forest.

Notwithstanding this evidence of the amount of lost wages, the jury could

---

[2] Some courts of appeals have held that once a jury finds liability, it is presumed that compensatory damages must be awarded if there is objective evidence of injury. *See, e.g., Russell v. Hankerson*, 771 S.W.2d 650, 652–53 (Tex. App.—Corpus Christi 1989, writ denied). This "zero damages" rule only applies, however, when the injury is objective in nature and the complaint on appeal concerns the jury's failure to award non-economic damages related to the injury. *See Estrada v. Dillon*, 23 S.W.3d 422, 427 (Tex. App.—Amarillo 2000), *rev'd on other grounds*, 44 S.W.3d 558 (Tex. 2001). Non-economic damages include pain, suffering, mental anguish, and disfigurement. *See Golden Eagle Archery* 116 S.W.3d at 763. Because Hudson's complaint on appeal concerns the jury's failure to award economic damages for loss of earning capacity, we need not address the applicability of the zero damages rule.

have declined to award damages for lost earning capacity on the ground that Hudson failed to carry his burden to prove that his loss resulted from this accident. For the following reasons, we hold that a failure to find lost earning capacity resulting from the accident is not against the great weight and preponderance of the evidence.

Hudson contends that the disability decision demonstrates that his loss of earning capacity resulted from the accident with Forest. The disability decision concludes that Hudson has been disabled, as defined in the Social Security Act, since the date of the accident with Forest. The disability decision does not, however, address the question whether this accident caused Hudson's disability. Rather, the question before the administrative law judge was whether Hudson's disability caused him to be unable to work. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005) (discussing steps for administrative law judge to determine whether claimant is disabled).

Although the disability decision does mention some evidence that Hudson's brain injury was caused by the accident with Forest, the decision does not suggest that Hudson's other impairments—which included lumbar degenerative disc disease and psychological impairments—were caused by this accident. Nor does the disability decision address the extent to which each impairment contributed to Hudson's disability.

Moreover, additional evidence not before the administrative law judge was introduced at trial. This evidence called into question Hudson's theory of causation as well as his credibility. For example, contrary to Hudson's contention that this accident was serious enough to cause a traumatic brain injury, there was other evidence that the accident was minor and caused minimal vehicle damage. The police report offered into evidence recorded that the accident occurred in a

7

parking lot and the damage to both vehicles was minimal. Photographs of the vehicles further demonstrated that vehicle damage was minimal. From this evidence, the jury reasonably could conclude this was a low-speed accident that was unlikely to result in the serious injury alleged by Hudson.

Finally, there was evidence that Hudson had a pattern of involvement in car accidents followed by claims of injury. On cross-examination, Hudson testified that he remembered being involved in eight car accidents prior to 2009 and he complained of injuries resulting from three of those accidents. Hudson also testified that he sustained other injuries to his head and neck prior to the accident with Forest. Hudson testified that these other injuries had healed. The disability decision, however, provided some contrary evidence that Hudson still suffered from injuries not attributed to this accident. Specifically, the disability decision stated that Hudson suffered from lumbar degenerative disc disease and psychological impairments.

Because there were other plausible causes of Hudson's injury, the jury was entitled to resolve any inconsistencies in the evidence and could conclude that one of the accidents prior to 2009 caused Hudson's loss of earning capacity.

Based on the record evidence presented, we hold the jury's award of zero damages for loss of earning capacity is not against the great weight and preponderance of the evidence as to render it unfair or unjust. We therefore overrule Hudson's second issue challenging the jury's finding of zero damages for loss of earning capacity.

Because our disposition of Hudson's second issue renders immaterial Hudson's first issue challenging the jury's apportionment of liability, we need not address his first issue on appeal. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled Hudson's issue challenging the jury's award of zero damages, we affirm the trial court's take-nothing judgment.


/s/    J. Brett Busby
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.