**G. C. GREEN dba Channelview Discount Lumber Yard, Appellant,**

**v.**

**Milton BALDREE, Appellee.**

**No. 819.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 27, 1973.

Rehearing Denied July 18, 1973.

Robert C. Floyd; Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

John M. O'Quinn, W. James Kronzer, Kronzer, Abraham & Watkins, Houston, for appellee.

TUNKS, Chief Justice.

This is a personal injury case. The plaintiff Milton Baldree was a customer of the defendant G. C. Green and was on the premises of a lumber yard operated by the defendant when a roll of roofing felt fell, striking the plaintiff and inflicting the injuries for which he sued. A jury trial resulted in a verdict and judgment for the plaintiff. The defendant's motion for new trial was overruled and he appealed.

The first two issues in the charge submitted the plaintiff's claim under res ipsa loquitur. They were answered in the affirmative, favorably to the plaintiff. The jury also found two specific items of negligence of the defendant and that they were proximate causes of the incident in ques-

tion. It failed to find another specific item of primary negligence that was submitted. It failed to find contributory negligence. It found several items of damage totalling $17,750. The trial court's judgment for the plaintiff was based upon that verdict.

On May 14, 1969, the plaintiff went to the defendant's lumber yard to buy some roofing felt. The felt was located in the defendant's warehouse. It was in rolls three feet long and about ten inches in diameter. Each roll was wrapped in paper. In the warehouse the rolls were stored standing on end. There was one tier of rolls so stacked on the concrete floor of the warehouse. That tier was about eight feet wide and extended about ten feet back to the wall of the warehouse. Plywood was placed on top of the bottom tier of rolls and a second tier was stacked on top of that. That second tier was not full and the rolls on it were back six or eight feet from the front of the bottom tier.

There was a driveway running into the defendant's warehouse. The plaintiff drove his four door passenger automobile into the warehouse and stopped it in the driveway beside the roofing felt. In the procedure used for transferring the rolls from the stock into the plaintiff's car an employee of the defendant climbed up onto the plywood which lay on top of the bottom tier. The employee would walk across the plywood back to where the rolls in the second tier were. He would pick up a roll, carry it to the front and hand it to the plaintiff. The plaintiff would put it into the back end of his car. The rolls were put into the car through the opened right rear door. They weighed about 60 pounds each.

When the plaintiff had put three or four rolls into his car it became necessary for him to move them about so that he could load more rolls. In doing so he stood on the floor of the warehouse between his car and the stack of material, leaned the upper part of his body into the back of the car and maneuvered the rolls into position.

While the plaintiff was doing that the defendant's employee continued to carry rolls forward and set them on end near the edge of the plywood. Two rolls had been so positioned and the employee was walking back across the plywood to get another one when one of the two rolls fell and struck the plaintiff in the back. When he was struck the plaintiff was still leaning over and reaching into the back of his car. The plaintiff was facing away from the roll when it fell and hit him.

The manager of the defendant's lumber yard was a witness to the incident. He testified that he had just walked past the plaintiff's car and was a few feet in front of it when he heard a yell from the employee who was helping with the loading. He looked back and saw the roll fall and hit the plaintiff. He said that at the time the roll fell the other employee was not near it but was toward the back of the stack of rolls. The employee who was helping load said that he was walking toward the back to get another roll to bring forward when he heard the manager yell. He looked back and saw the roll fall and hit the plaintiff. The plaintiff testified that he did not touch the roll after it was set at the edge of the plywood and before it fell. The testimony of the other witnesses as to the plaintiff's position and activity corroborate the plaintiff's testimony in that respect.

The defendant and his employees testified that it was the usual practice to set rolls of roofing felt on end and that they normally would not fall over unless some force was applied to them. There was testimony that the plywood lying on top of the bottom tier of rolls was not stable and rigid, that it would have some movement as a man walked on it. This evidence suggested that the movement in the plywood as the employee walked back across it to get another roll could have caused the roll to fall.

The first group of appellant's points of error are based upon his argument

that the res ipsa loquitur rule is not applicable to this case. Those points of error are overruled. The trial court properly applied the rule under the facts of this case. Res ipsa loquitur is properly applicable where an injury is caused by a thing that is under the control of the one sought to be charged with fault in causing the injury and where the accident causing the injury, and the circumstances attending the accident, reasonably lead to the belief that, in the absence of negligence, it would not have occurred. Bond v. Otis Elevator Company, 388 S.W.2d 681 (1965). Both of those facts necessary for the application of the rule were shown by the evidence in this case. See Thorpe Insulation Company v. Rice, 353 S.W.2d 498 (Tex.Civ.App.–Eastland 1962, writ ref'd n.r.e.).

█ The appellant also complains of the form of the res ipsa loquitur issue submitted by the trial court. That issue was as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on the occasion in question, a roll of felt was caused to fall and strike Milton Baldree through a failure to exercise ordinary care on the part of the defendant, its agents or employees?

Answer 'We do' or 'We do not.' "
It was followed by a predicated proximate cause issue. Both were answered in the affirmative. The appellant complains that the first issue constituted an impermissible general charge and was a comment on the evidence. The very purpose of the res ipsa loquitur rule is to relieve the plaintiff of the burden of proving and submitting specific acts and omissions of negligence and to permit him to establish fault through the inference of negligence that flows from the circumstances under which the accident occurred. The issue did not constitute a comment on the evidence. It was in proper form. G. Hodges, Special

Issue Submission in Texas 106 (1959). Those points of error related to the form of special issue no. 1 are overruled.

In addition to the res ipsa loquitur issues the trial court submitted three groups of issues inquiring as to specific items of negligence. As to two of those groups the jury answered in the affirmative and as to the other in the negative. The defendant objected to those issues on the ground that their submission was not sustained by the plaintiff's pleading. The trial court overruled those objections and the appellant contends that such rulings were error.
The quoted words are then followed by was, " . . . Plaintiff's injuries were in truth and in fact proximately caused by the failure of Defendant and/or his employees acting in the course and scope of their employment to exercise ordinary care as required by law. In this connection. . . ."
The quoted words are then followed by allegations as to the falling of the roll of felt, that it was in control of the defendant and that the event would not have happened except for defendant's negligence. Then follows this language, "In other words, Plaintiff specifically invokes the doctrine of res ipsa loquitur and give Defendant notice of his intent to rely thereon." At no place in his petition did the plaintiff allege any specific acts or omissions of negligence or otherwise indicate that he intended to prove negligence by any other theory of proof than that permissible under the res ipsa loquitur rule.

█ The defendant did not specially except to the plaintiff's pleading of negligence on the ground that it was general. The appellee argues that his general plea of negligence, to which there was no exception, properly furnished a basis for his request of issues as to specific negligence. We are aware of the general rule which supports this argument of the appellee. Kainer v. Walker, 377 S.W.2d 613 (Tex. Sup.1964); City of Houston v. Moore, 389 S.W.2d 545 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.). However, we are of

the opinion that such rule is not applicable here. The general plea of negligence is a legitimate part of a plea of res ipsa loquitur just as a general submission of negligence is a legitimate submission of liability under that rule. If the defendant had excepted to it his exception would properly have been overruled. If the appellee's argument were accepted that would mean that in any personal injury case the plaintiff could plead res ipsa loquitur, however ill founded that plea might be, and thereby deprive the defendant of his right to have the negligence with which he was charged specified.

■ The determination of the propriety of the submission of the issues inquiring about specific items of negligence is not, however, controlling of this appeal. The trial court's judgment is sustained by the answers to the res ipsa loquitur issues. If the specific issues were improperly submitted they can be ignored without affecting the judgment. The error, if any, in submitting them was harmless. Texas Rules of Civil Procedure 434.

■ There is still another reason why overruling the defendant's objections of "no pleading" to the specific negligence issues did not constitute reversible error. Those objections were included in a long series of objections to each issue. Many of the objections so stated were wholly untenable. For instance, as to each there was an objection that there was not factually sufficient evidence to sustain an affirmative answer and an objection that such an affirmative answer would be against the weight of the evidence. For that reason the trial court was justified in overruling the "no pleading" objections. Monsanto Company v. Milam, 494 S.W.2d 534 (Tex.Sup.1973); Tex.R.Civ.P. 274.

■ The trial court submitted a special issue as to medical and hospital expenses incurred by the plaintiff in the treatment of his injuries. The jury answered $1,000.00. The bills received by the plaintiff were identified and received in evidence. A doctor testified that the treatments received by the plaintiff were necessitated by his injuries and that the charges made were reasonable. The mathematical total of the bills was $998.15—$1.85 less than the verdict. This discrepancy was accounted for by the trial court in the judgment. Appellant's points of error as to that portion of the verdict are overruled. The jury's finding was supported by sufficient evidence and was not against the weight of the evidence.

The general damage issue, number 13, was submitted in paragraphs with instruction that the paragraphs be answered separately. The items so submitted and the jury's answers were:

a. Loss of earning capacity in the past —$7,000.

b. Loss of earning capacity in the future—$3,000.

c. Physical and mental pain in the past —$3,500.

d. Physical and mental pain in the future—$1,000.

e. Physical impairment in the past— $250.

f. Physical impairment in the future— $2,000.

This damage issue also included an instruction that the jury not allow any amount for the plaintiff's pre-existing physical condition except to the extent, if any, that such pre-existing condition was aggravated by the occurrence in question.

At the time of his injury the plaintiff was operating what he described as a "Dairy Queen type place", serving sandwiches and ice cream products. He testified that he personally participated in the operation, working seven days and more than 90 hours a week. He was also the owner and lessor of another such establishment and he had to maintain it in repair. In fact, he was getting the roofing felt to

repair that other building when he was hurt. Immediately after the accident the plaintiff was taken to a hospital. He stayed there about a week. He was confined to his home for six to eight weeks after he left the hospital.

The defendant's employees who were at the scene of the accident testified that they could see discoloration in plaintiff's low back after the accident. The doctor who treated him diagnosed his condition as "severe contusion of the back due to trauma." Another doctor expressed the opinion that the plaintiff "probably had a pinched nerve in his lower back and it was my impression that this probably was being produced by a ruptured disc." Another medical witness who was called by the defendant testified that he examined the plaintiff; that the findings of that examination were essentially normal; that he did not believe the plaintiff had a ruptured disc; and that his diagnosis was a lumbosacral strain.

Between the time of the injury and the trial the plaintiff had disposed of his ice cream and sandwich business. He had moved to Liberty, Texas where he was operating a Western Auto store. The plaintiff testified that after his injury his back hurt and that he was unable to do the lifting incident to his business. He said that this disability made it necessary that he employ a man to help at the auto store. He paid such employee $100 a week. There was evidence of plaintiff's earnings from his businesses before and after his injury.

■ Appellant presents a point of error that the jury's answer to special issue 13 is not supported by sufficient evidence and that "the excess should be remitted by the court." This point is not germane to any ground set out in defendant's motion for new trial. At no place therein did the defendant ask the trial court either to grant a new trial or to order a remittitur because of the jury's answers to the general damage issue. The appellant's point of error as to excessiveness is not properly pre-

served for review. Baker v. Sturgeon, 361 S.W.2d 610 (Tex.Civ.App.—Texarkana 1962, no writ). If it were so preserved it would be overruled.

There is a point of error wherein appellant states, "The trial court erred in submitting special issues No. 13E and 13S because they allow a double recovery for the same damages in special issues 13A and 13B." (There is no special issue "13S". Such designation in the point of error is obviously a typographical error and we have construed it as referring to 13F.) In the trial court the defendant objected to each of paragraphs E and F of the general damage issue in these words: "Said issue is not proper because it allows the double recovery for damages which have already been requested in Special Issues 13a and 13b." The grounds in defendant's motion for new trial to which this point of error is germane recite that the court erred, "In overruling Defendant's timely objection that Special Issue No. 13E allows recovery based upon the same evidence that is presented to the jury to answer Special Issues Nos. 13A and B, and allows double recovery based upon the same evidence." Substantially the same language is used as to No. 13F. It is to be noted that the defendant did not complain, either in his objections to the charge or in his motion for new trial, that paragraphs E and F of the damage issue permitted a double recovery as related to paragraphs C and D which inquired as to past and future pain and suffering.

■ It long has been held proper for a trial court in the submission of the damage issue in a personal injury case to direct the jury's attention to the particular elements of damage that may, under the pleadings and evidence, be considered in answering that issue. It is also proper that the court by instruction limit the jury's consideration to those elements of damage so listed. Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880 (1948). It is sometimes difficult to direct the jury's attention to those different ele-

ments of damage and at the same time be assured that the jury will not consider one of them twice. For example, in most personal injury cases both the elements of lost earning capacity and of pain are submitted. Pain can be of such a nature as to detract from one's earning capacity. If a jury in fixing the compensation to be awarded for loss of earning capacity considers that portion of such loss that is caused by pain and then, in fixing the compensation to be awarded for pain, again considers that pain which detracted from earning capacity there is, to such extent, a double recovery by the plaintiff. And yet, as to such problem the Court said, in Felder, supra, at page 883, "Distinctions which are too fine are apt to lead to needless perplexities and purely legalistic results."

Another facet of the damage issue in a personal injury case which the courts have considered in connection with the possibility of double recovery grows out of the submission of both loss of earning capacity and physical impairment as separate elements of damage. The appellant's point of error now under consideration relates to that problem. A principal authority he cites is International & G. N. Ry. Co. v. Butcher, 98 Tex. 462, 84 S.W. 1052 (1905). That was a suit by a minor for personal injuries. The trial court instructed the jury that in assessing damages it might consider (1) physical and mental suffering, past and future, (2) future effect of plaintiff's injuries upon his physical and mental health, (3) any impairment of his ability or capacity to pursue, after he reached majority, the course of life he might otherwise have followed, and (4) decreased physical and mental ability to labor and earn money. The Supreme Court sustained the defendant's contention that the trial court's charge authorized the jury to assess damages more than once for the same thing. The language of the opinion, if read out of context, sustains the argument that physical impairment is not an element of recoverable damage separate and distinct from lost earning capacity. However, the

Court in explanation of its holding noted a distinction between the facts of the case and those of Texas & P. Ry. Co. v. Morin, 66 Tex. 225, 18 S.W. 503 (1886) saying, "The difference between the charge quoted in the opinion in that case and that now before us is that the court told the jury to consider the facts grouped in each proposition in arriving at the sum of compensation for all effects of the injuries, while this charge separated the effects of the injuries in such way as to allow the jury to assess more than one sum for a disability to earn money." This language suggests that the form of the trial court's instruction on damages was the basis for the reversal of the plaintiff's judgment.

The appellant also cites International-Great Northern R. Co. v. King, 41 S.W.2d 234 (Tex.Comm'n App.1931, holding approved) and Yessler v. Dodson, 104 S.W. 2d 95 (Tex.Civ.App.—Amarillo 1937, writ dism'd) as support of his point of error. Those cases do not hold that there may not be a compensable item of physical impairment separate and distinct from the element of loss of earning capacity. They hold that under the facts of those cases the charge on damages in the form given by the trial court permitted a double recovery by the plaintiff. The appellant cites the Felder case, supra, as approving the King case. In the Felder case the Court affirmed a judgment for the plaintiff where the trial court had instructed the jury that as to the damage issue it might consider the plaintiff's (1) physical and mental pain, (2) loss of teeth and (3) disfigurement. As to the King case the Court, in Felder, said, "It was held (in King) that the instruction as a whole was confusing and misleading, and permitted the recovery of double damages. The case at bar is clearly different from and does not run counter to that case and the authorities it cites and follows." (Parentheses added.)

In the Felder case the Court cited with approval Southwestern Bell Telephone Co. v. Ferris, 89 S.W.2d 229 (Tex.Civ.App.— Dallas 1935, writ dism'd). In the Ferris

case the damage issue submitted included the elements of (1) past and future pain and suffering, (2) past and future diminished earning capacity and (3) disfigurement. The appellate court held, among other things, that the element of figurement was properly 'listed' as an element of damages to be considered and did not necessarily permit a double recovery by the plaintiff. The facts of the Ferris case are reasonably similar to the facts of this case and the holding there is authority for the proposition that allowance of a recovery for physical impairment as well as for lost earning capacity and pain does not necessarily constitute the allowance of a double recovery. Other cases that support that conclusion are Charles T. Picton Lumber Company v. Redden, 452 S.W.2d 713 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.); Mikell v. La Beth, 344 S.W.2d 702 (Tex.Civ.App.—Houston 1961, writ ref'd n. r. e.); and Riley v. Norman, 275 S.W.2d 208 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.).

 It would not be proper in every personal injury case to instruct the jury that it might consider loss of earning capacity, pain and physical impairment as separate elements of plaintiff's damage. In order to be entitled to that submission the plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. The defendant in this case did not, by objection to the charge, motion for new trial or point of error, challenge the existence or sufficiency of this evidence to discharge that burden. Also, in almost all of such cases, if not all of them, the defendant would be entitled, on request, to have the court submit a special instruction that would be calculated to prevent the jury from allowing a double recovery. However, before a defendant could successfully complain of the court's

failure to submit that special instruction he would have to tender it in substantially correct form and request its submission. Frontier Feedlots, Inc. v. Conklin Bros., Inc., 476 S.W.2d 31 (Tex.Civ.App.—Amarillo 1971, no writ); Tex.R.Civ.P. 273 and 279. This defendant failed to meet that requirement.

The appellant's points of error based upon objections of the damage issue are overruled.

The judgment of the trial court is affirmed.