**HARRIS COUNTY, Texas, Appellant,**

v.

**Lynn SMITH, Erica Smith, Individually and next of friend of Hasasha Smith and Lynn Smith, Jr., Appellees.**

**No. 01–99–00729–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 5, 2001.

Rehearing Overruled May 4, 2001.

with this court in cause no. 02–00–399–CR.

Cedric K. Loeb, Sandra D. Hachem, Michael P. Fleming, Houston, for Appellant.

Willie Coleman, Jr., Houston, for Appellee.

Panel consists of Justices O'CONNOR, TAFT, and SMITH.\*

## OPINION

TAFT, Justice.

Appellant, Harris County, Texas, challenges a jury verdict rendered in favor of appellees, Lynn Smith, Erica Smith, individually and next of friend of Hasasha Smith and Lynn Smith, Jr. (the Smiths). We address (1) whether the trial court committed reversible error by submitting certain individual elements of damages within a broad-form damages question when no evidence supports those elements, and (2) whether the evidence was legally and factually sufficient to support the jury's finding for damages in favor of Lynn Smith. We affirm.

## Background

The Smiths were injured in 1994 when their automobile collided with Deputy Sheriff Spurgeon's patrol car. The jury found that Spurgeon's negligence caused the Smiths' injuries. Harris County does not challenge the negligence finding, and Spurgeon has not appealed. All the Smiths suffered injuries ranging from back problems to bleeding from the mouth. They were treated at a hospital and released the same day, and later visited doctors for follow-up treatment.

The Smiths sued Harris County and Spurgeon for damages, claiming that Spurgeon operated his patrol car negligently and recklessly while on duty. The jury awarded the Smiths $95,100.00 in damages, plus costs.

## Jury Charge

Harris County's first three issues challenge the questions submitted to the jury to assess the damages due Lynn and Erica Smith.[1] In issues one and two, Harris County claims the trial court erred by

---

\* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Question 3, regarding Lynn Smith, asked the jury to consider the following factors in calculating damages, if any:
   a. Physical pain and mental anguish
   b. Loss of earning capacity
   c. Physical impairment
   d. Medical care
   The jury awarded Lynn Smith $90,000.00. Question 4, regarding Erica Smith, asked the jury to consider only the following factors in calculating damages, if any:
   a. Physical pain and mental anguish
   b. Physical impairment
   c. Medical care.
   The jury awarded Erica Smith $3,100.00.

submitting the elements of Lynn Smith's loss of earning capacity and physical impairment, over Harris County's objection that no evidence supported these elements. Harris County's third issue challenges submitting the element of Erica Smith's physical impairment question, over Harris County's objection that no evidence supported this element.[2]

### A. Standard of Review

■ To include anything in the jury charge, whether by question, instruction, or definition, it must be "raised by the written pleadings and evidence." TEX. R.CIV.P. 278. With respect to questions, the supreme court has mandated that, "whenever feasible," specifically, "unless extraordinary circumstances exist," the trial court must submit the case to the jury by "broad-form" questions, rather than by separate, granulated questions for each element of a cause of action. *See id.;* TEX. R.CIV.P. 277.[3] The trial court's discretion is broad, however, provided the charge is legally correct. *Hyundai Motor Co.,* 995 S.W.2d at 664; *see also Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex. 2000) ("It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed on the law.").

■ The abuse of discretion standard governs claims of error in the jury charge. *E.B.,* 802 S.W.2d at 649. Error in the

charge is reversible if it "probably caused the rendition of an improper judgment; or probably prevented the appellant from properly presenting the case to the court of appeals." TEX.R.APP.P. 44.1(a); *see Casteel,* 22 S.W.3d at 388; *Island Recreational Dev. Corp. v. Republic of Texas Savs. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Prather v. Brandt,* 981 S.W.2d 801, 810 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). In determining whether error is reversible, we must consider the record as a whole, including the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational,* 710 S.W.2d at 555.

### B. Loss of earning capacity—Lynn Smith

■ Harris County argues there was no evidence to support the submission of loss of earning capacity as an element of damages for Lynn Smith. A plaintiff who seeks damages for impairment of earning capacity must prove these damages "with the degree of certainty to which it is susceptible," *Bonney v. San Antonio Transit Co.,* 160 Tex. 11, 325 S.W.2d 117, 121 (1959), through evidence from which a jury might reasonably measure the plaintiff's earning capacity before the injury and project that capacity into the future. *Wal–Mart Stores, Inc. v. Ard,* 991 S.W.2d 518, 522 (Tex.App.—Beaumont 1999, pet. denied). The question is not how much Lynn

---

2. In addition to objecting to including the challenged elements of damages in the charge, Harris County objected to submitting the elements of damages globally, and asked the trial court to segregate each element of damages by listing each separately, with a blank beside each for any amount the jury might award. The trial court overruled this objection and submitted the elements globally, but Harris County has not challenged this ruling on appeal.

3. *See, e.g., Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 663–64 & n. 8 (Tex.1999) (approving single, broad-form question for multiple theories of recovery); *Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649–50 (Tex.1990) (approving single, broad-form question that asked ultimate, "controlling" issue—whether parent-child relationship "should be terminated"—and rejecting challenge that single question violated due process by permitting the State to terminate parental rights without discharging burden imposed by controlling statute).

Smith earned before his injury, but his capacity to earn, and to what extent that capacity had become impaired. *Border Apparel–East, Inc. v. Guadian*, 868 S.W.2d 894, 897 (Tex.App.—El Paso 1993, no writ). Factors to be considered include "stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain." *Id.*

Lynn Smith was self-employed. He earned his income by farming livestock, buying and selling cars and car parts, and renting trailer houses. The record contains no evidence of his annual income, either before or after the accident, nor any evidence that his income decreased because of the accident. Furthermore, when asked why he had not answered an interrogatory concerning his loss of income resulting from the accident, Smith explained he was unemployed. While Smith testified he had to sell some of his livestock after the accident to make ends meet, no testimony indicates this resulted in a loss of income or that he had been able to make ends meet without selling his livestock before the accident. Without any evidence to measure the loss of earning capacity, the jury could only speculate as to the amount of lost earning capacity. *See Bonney*, 325 S.W.2d at 121. The trial court erred, therefore, by submitting the element of loss of earning capacity in the damage question for Lynn Smith.

## C. Physical impairment—Lynn and Erica Smith

■ Harris County also argues there was no evidence to support the submission of physical impairment as an element of damages for either Lynn or Erica Smith. Physical impairment is an element of damages that extends beyond loss of earning capacity and beyond any pain and suffering, to the extent that it produces a sepa-

rate loss that is substantial or extremely disabling. *Robinson v. Minick*, 755 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Green v. Baldree*, 497 S.W.2d 342, 350 (Tex.Civ.App.—Houston [14th Dist] 1973, no writ).

### 1. Erica Smith

■ Erica Smith was four months pregnant when the accident happened. She described pain in her abdominal area that lasted until approximately two months after her baby was born. She also described sleep problems because of abdominal and back pain. Two months after her baby was born, all problems related to the accident stopped, however, and she no longer had pain. This testimony amounts to no evidence of physical impairment because the alleged impairment did not extend beyond pain and suffering to the extent that it produced a separate, substantial, or extremely disabling loss. *See Robinson*, 755 S.W.2d at 893; *Green*, 497 S.W.2d at 350. The trial court erred, therefore, by including the element of physical impairment in the damage question for Erica Smith.

### 2. Lynn Smith

■ Lynn Smith described back problems after the accident. He consulted a physician, Dr. F. Allen Johnston, who concluded Lynn Smith suffered from a herniated disc at the L4–5 level. When anti-inflammatory medicine, therapy, and cortisone injections did not relieve the pain, Dr. Johnston recommended surgery to remove the L4–5 disc on Smith's right side. Dr. Johnston testified Smith would never heal completely after the recommended surgery and would have a back condition "for the rest of his life." Lynn Smith would be indefinitely restricted to lifting no more than 20 pounds, and would not be permitted to bend repeatedly or twist at the waist, nor sit for prolonged periods of time. This testimony is some evidence of

an impairment that extended beyond pain and suffering to the extent that it produced a separate, substantial, or extremely disabling loss. *See Robinson*, 755 S.W.2d at 893; *Green*, 497 S.W.2d at 350. The trial court did not err, therefore, by including the element of physical impairment in the damage question for Lynn Smith. We overrule issue two.

### D. Harm Analysis under Broad–From Submission after *Crown Life v. Casteel*

Harris County next contends the trial court's error was per se harmful under recent Supreme Court of Texas precedent. Harris County maintains *Crown Life Insurance Co. v. Casteel* requires that we reverse and order a new trial, on the grounds that we cannot determine whether the jury awarded damages for elements that lacked evidentiary support. According to Harris County, *Casteel* precludes our applying well-settled harm analysis for broad-form submission to determine whether submitting those elements was reversible error.

*Casteel* involved claims against an insurance company by policyholders and an insurance agent, who sought recovery under article 21.21 of the Insurance Code for DTPA-based violations.[4] The supreme court reversed and ordered a new trial because a single, broad-form question erroneously commingled DTPA theories of liability that were valid as to the policyholders but invalid as to the agent because he lacked consumer standing. 22 S.W.3d

at 385, 387. The Austin Court of Appeals had concluded, under well-settled standards governing review of broad-form submission, that while objections to the charge had preserved error in submitting the invalid theories, the appealing party had not affirmatively shown error that probably caused rendition of an improper judgment. *See Casteel v. Crown Life Ins. Co.*, 3 S.W.3d 582, 594 (Tex.App.—Austin 1997), *rev'd*, 22 S.W.3d 378 (Tex.2000). Applying previously settled harm analysis, the court of appeals reasoned Crown Life had not shown harmful, reversible error because the evidence supported other, validly submitted theories of liability, on which the jury might have relied in reaching its verdict. *See Casteel*, 3 S.W.3d at 594. For the court of appeals, mere possibility of error was insufficient to show harm under rule 81(b)(1) (current version at rule 44.1(a)(1)). *See Casteel*, 3 S.W.3d at 594.

In rejecting this reasoning, and expressly disapproving several cases applying the same reasoning, the supreme court held:

> When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding.

*Casteel*, 22 S.W.3d at 389.[5] *Casteel's* rule of presumed harm, per se reversible error,

---

4. *Casteel*, 22 S.W.3d at 381–82; *see* Tex.Ins. Code Ann. art. 21.21 (Vernon 1981 & Supp. 2001); Tex.Bus. & Com.Code Ann. § 17.46(b) (Vernon Supp.2001).

5. In ruling that it could not determine, from the *Casteel* record, whether the improperly submitted theories formed the sole basis for the jury's finding, and that the error was harmful for that reason, the supreme court

did not apply the "probably caused rendition of an improper judgment" standard for reversible error, as applied by the court of appeals under former rule 81(b)(1) of the Rules of Appellate Procedure, now Tex.R.App.P. 41.1(a)(1). *See Casteel*, 3 S.W.3d at 594 (court of appeals opinion). Instead, the court applied the alternate standard, that the error "probably prevented the [appealing party] from properly presenting the case." *See Cas-*

under which mere possibility of harm will suffice for a broad-form liability question that contains an erroneously submitted theory of liability, clearly departs from traditional harm analysis for broad-form submission, under rules 44.1(a) and 61.1, and their predecessor, rule 81(b)(1). *See Casteel*, 22 S.W.3d at 388 (overruling appellate decisions applying traditional harm analysis). What is not clear is whether the new, presumed harm analysis also applies to erroneously submitted, individual elements of a broad-form damages question.[6]

### E. Does *Casteel* Apply to Erroneously Submitted Elements of Damages?

*Casteel* addresses only liability questions erroneously included in a broad-form charge. *Casteel* does not address whether its rule applies to broad-from damage questions that contain erroneously submitted elements of damages. We conclude the presumed harm, per se reversible error standard of *Casteel* does not apply when a trial court erroneously submits elements of a broad-form damages question, and that traditional harm analysis is proper, for the following reasons.[7]

### 1. *Casteel* Ensures Jury Determination of "Key Issue"—Liability

*Casteel* precludes even the possibility that a party might be found liable on a completely invalid theory. In explaining its holding in *Casteel*, the court stated:

> To hold [the error of submitting **invalid theories of liability** to the jury] harmless would allow a defendant to be held **liable** without a judicial determination that a fact finder actually found the defendant *should* be held **liable** on proper, legal grounds.

*Casteel*, 22 S.W.3d at 388 (italicized emphasis in original; bolded emphasis added).

The supreme court's departure from settled harmful error analysis of cases submitted to the jury under the broad-form mandate of rule 277 echoes constitutional dimensions the supreme court recognized in *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504 (Tex.1995). *Garcia* upheld the constitutionality of submitting a workers' compensation case to the jury under revised provisions of the Labor Code. *Id.* at 529. The supreme court concluded the new statute did not impinge the worker's "inviolate right to jury trial" because the legislature had ensured the jury decide the *"key issue"* of impairment. *Id.* (Emphasis added.)[8]

teel, 22 S.W.3d at 388 (supreme court opinion) (quoting from Tex.R.App.P. 61.1(a)(2) (reversible error standard for supreme court)); *see also* Tex.R.App.P. 44.1(a)(2) (reversible error standard for court of appeals). The court also recognized, however, that submitting an improper liability question might be harmless in certain instances. *Casteel*, 22 S.W.3d at 389 (stating examples).

**6.** We reject Harris County's reliance on the holding of *Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117 (1959), that submitting an invalid damage element was reversible error because no evidence supported the challenged damage element. *Id.* at 121; *see also Rubner v. Kennedy*, 417 S.W.2d 860, 862 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e) (same). While neither court

conducted a harmless error analysis, both predate the 1988 amendment to rule 277 for broad-form submission, and are, therefore, not instructive in a post-broad-form mandate era.

**7.** We note that the Amarillo Court of Appeals has concluded, without considering the reasons we consider, that *Casteel* analysis does apply when a trial court erroneously submits elements of a broad-form damages question. *See Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg.*, 42 S.W.3d 149, 162 (Tex.App.—Amarillo 2000, no pet.).

**8.** Concurring in *Herbert v. Herbert*, Chief Justice Phillips alluded to similar constitutional concerns about broad-form submission by noting the difficulty of determining precisely

This reasoning recalls the court's statement, in *Exxon Corp. v. Perez*, that, provided "matters are timely raised and properly requested" for inclusion in the charge to the jury, "a judgment must be reversed 'when a party is denied proper submission of a *valid theory of recovery* or a *vital defensive issue*' raised by the pleadings and evidence." 842 S.W.2d 629, 631 (Tex. 1992) (Emphasis added.)

■ The *Casteel* excerpts, quoted above, suggest the supreme court may have departed from settled harm analysis because the trial court's error lay in erroneously submitting "key issues"—the DTPA theories of liability—on which the insurance-agent plaintiff could not prevail as a matter of law because he was not a consumer as to those theories. *See Casteel*, 22 S.W.3d at 387.[9] But no possibility existed here that Harris County would be held legally responsible under an invalid theory: liability was essentially undisputed because Sheriff Spurgeon conceded he was not paying attention. The jury answered the "key," "primary," and "ultimate" issue of liability by finding Harris County negligent.

### 2. Mere Possibility of Charge Error Rejected for Sufficiency Challenge

*Thomas v. Oldham*, 895 S.W.2d 352 (Tex.1995), like this case, also arose out of a traffic collision with a police vehicle in the Houston area. In *Thomas*, the trial court submitted the damages question to the jury in much the same manner as here—a single, broad-form question that listed five separate elements of damages, with a single blank provided for the total amount. *Id.* at 354, 359. The jury awarded $500,000 as the total damage award, but also made notations of specific amounts beside each element. *Id.* at 359. Harris County relied on the notations of specific amounts to challenge the sufficiency of the evidence to support two of the damages elements, loss of earning capacity and medical care. *Id.* Harris County argued the separate notations were no different from separate damage awards for each of the two challenged elements. *See id.*

The supreme court refused to equate the jury's marginal notes with separate answers to separate elements of damages. *Id.* at 359–60. Moreover, the court rejected the sufficiency challenge out of hand, because it was not premised on considering the evidence as a whole. *Id.* at 360. The *Thomas* challenge, to the legal sufficiency of the evidence to support an award of an element of damages, is different from the challenge here, which contests including certain elements of damages in the first place. This difference is not controlling, however, because, in addition to pleadings, there must be legally sufficient evidence before anything can be submitted to the jury, whether by question, instruction, definition, or element of damages. *See* Tex.R.Civ.P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992) (holding that legally sufficient evidence, *i.e.*, more than a scintilla, supported submitting question of plaintiff's contributory negligence). Har-

---

what "key issue" the jury decided by answering "no" to a single question that included a defensive issue submitted by instruction: Did the plaintiff not prove her case; or did the defendant establish his defense? *See Herbert v. Herbert*, 754 S.W.2d 141, 145 (Tex.1988) (Phillips, C.J., concurring).

9. "Liability" means legal responsibility for the plaintiff's claims. *See Morgan v. Compu-*

graphic Corp., 675 S.W.2d 729, 732 (Tex. 1984); *see also Upjohn Co. v. Freeman*, 885 S.W.2d 538, 545 (Tex.App.—Dallas 1994, writ denied) (clarifying that liability, i.e., legal responsibility, is premised on causal nexus between event sued upon and defendant's conduct, while damages are premised on causal nexus between event sued upon and plaintiff's injuries).

ris County should not be permitted to accomplish, by challenging the jury charge, what it cannot accomplish by challenging the legal sufficiency of the evidence. In neither case should we presume error based on the possibility of error. *See Thomas,* 895 S.W.2d at 360.

### 3. Secondary Authority Supports Harmful Error Analysis for Broad Form Damage Questions

In adopting a presumed harm standard over harmful error analysis for erroneously submitted liability questions, *Casteel* relies, in part, on law-review articles by Texas commentators who strongly recommended this change in the law. *Casteel,* 22 S.W.3d at 388; *see* William V. Dorsaneo, (*Broad–Form Submission of Jury Questions and the Standard of Review,* 46 SMU L. Rev. 601, 634–36 (1992) (*Dorsaneo*)) Louis S. Muldrow & William D. Underwood, *Application of the Harmless Error Standard to Errors in the Charge,* 48 Baylor L. Rev. 815, 838–40, 854–55 (1996) (*Muldrow & Underwood*). Muldrow and Underwood also recommend the presumed harm standard for erroneously submitted elements of damages, *Muldrow & Underwood,* 48 Baylor L. Rev. at 840–43. Professor Dorsaneo does not accept the presumed harm standard for erroneously submitted elements of damages, except

when an award rests on a flawed theory of liability,[10] or when the damage award is challenged as excessive overall, neither of which is present here. *See Dorsaneo,* 46 SMU L. Rev. at 630.

■ Professor Dorsaneo maintains "there is a principled and sensible basis for concluding there is no reversible error" when it is reasonable to presume that the jury awarded damages for elements that had support in the evidence, rather than those that lacked evidentiary support. *Id.* This "principled and sensible basis" represents the well-settled harmless error approach of rule 44.1(a)(1) and its predecessor, former rule 81(b)(1). *See Island Recreational,* 710 S.W.2d at 555.[11] We agree this is the better approach to determine whether submitting erroneous elements of damages is reversible error.

To summarize, we begin, as we must, with the broad-form mandate of rule 277 and a jury verdict that determined the "key issue"—that Harris County was liable. Given those circumstances, we conclude the policy concerns that may have prompted *Casteel* do not weigh as strongly here in favor of abandoning settled harm analysis for erroneously submitted elements of damages that the jury may have possibly, but not necessarily, relied on in awarding damages for Harris County's un-

---

**10.** *See, e.g., Wingate v. Hajdik,* 795 S.W.2d 717, 720 (Tex.1990) (affirming this Court's disposition to reverse and remand for a new trial because single damage award was premised on multiple theories of liability, one of which was misappropriation of assets, and shareholder could not recover against co-shareholder on that basis because claim belonged only to the corporation.) Professor Dorsaneo has recognized, "In this situation, as the court opinion [in *Wingate*] suggests, it is more sensible to presume that the flawed legal theory did have an impact upon the damages awarded...." *Dorsaneo,* 46 SMU L. Rev. 601, 630.

**11.** In declining to hold that failure to submit a requested instruction on waiver was "reversible error *per se*" in *Island Recreational,* the supreme court reaffirmed that, "To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety." 710 S.W.2d at 555 (emphasis in original). "Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment." *Id.*

challenged negligence. As addressed above, *Casteel* addresses only erroneously submitted liability questions; nothing in *Casteel* suggests it applies to erroneously submitted elements of damages. The mere possibility of error has never sufficed for analogous challenges to the sufficiency of the evidence to support an element of damages awarded. Moreover, we agree with Professor Dorsaneo, that traditional harm analysis is the better reasoned approach for assessing error in submitting elements of damages.

## F. Traditional Harm Analysis

Traditional harm analysis embodies two basic principles. First, we must not consider the error in isolation, but as part of the entire charge. *See Island Recreational,* 710 S.W.2d at 555. Second, we may not vacate an entire award if the jury could have awarded all damages for a single element. *See Thomas,* 895 S.W.2d at 360.

### 1. Charge As a Whole Permits "Zero" Award for Certain Elements

We have held no evidence supported including the elements of loss of earning capacity for Lynn Smith, or physical impairment for Erica Smith. *Casteel* does not change, in any respect, the well-settled rule that we must consider claims of charge error within the context of the entire charge. *See Island Recreational,* 710 S.W.2d at 555; *Merckling v. Curtis,* 911 S.W.2d 759, 767 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Here, the damages questions for both Smiths recognize that neither may have incurred every element of damages listed. Each question asked "What sum of money, ... would fairly and reasonably compensate [Lynn Smith or Erica Smith] for [his/her] damages, *if any*," resulting from the occurrence in question. In instructing the jury to answer, the question repeated: "Answer in dollars and cents for damages, *if any*

...." (Emphasis added.) In addition, the jury was instructed to consider each element of damages separately.

The "if any" qualifier, coupled with the instruction to consider each element of damages separately, informed the jury, within the context of the entire charge, that damages need not be awarded for every element included in the question. *See Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 352–53 (Tex.App.—Tyler 1998, pet. denied). The same is true of the phrase "resulting from the occurrence in question" for any damages awarded, which reinforced the requirement of a causal nexus between the accident and any damages the jury might award. *See Upjohn Co. v. Freeman,* 885 S.W.2d 538, 545 (Tex.App.—Dallas 1994, writ denied).

### 2. Global Amount May Have Been for a Single Element

Several cases hold that, when a damages question is submitted in broad form, as required by rule 277 of the Rules of Civil Procedure, with the result that the jury is not asked to specify the amount of damages for each element, the jury may have awarded the entire amount of damages for any single element. *See Thomas,* 895 S.W.2d at 360; *Goodman v. Page,* 984 S.W.2d 299, 304 (Tex.App.—Fort Worth 1998, pet. denied); *K Mart Corp. v. Rhyne,* 932 S.W.2d 140, 144, 147 (Tex.App.—Texarkana 1996, no writ). Accordingly, in addressing claims of error premised on erroneously submitted elements of a damage question, courts find no reversible error when sufficient evidence supports other, unchallenged damage elements. *Wagnon,* 979 S.W.2d at 352–53. Under these circumstances, it is reasonable to presume that the jury awarded damages only for elements with evidentiary support. *See Dorsaneo,* 46 SMU L. REV. at 630. This approach is all the more reasonable when,

as addressed above, the charge as a whole informs the jury that damages need not be awarded for every element. Accordingly, we examine the evidence supporting the unchallenged elements of damages for Lynn and Erica Smith, respectively.

### 3. Application of Traditional Harm Analysis

#### a. $90,000 Damages to Lynn Smith

■ The jury charge asked for a dollar amount to compensate Lynn Smith for the injury sustained as a result of Sheriff Spurgeon's negligence. In addition to the erroneous loss-of-earning-capacity element, the jury was instructed to consider physical pain and mental anguish, physical impairment, and medical care. To assess the harm arising from erroneously including the loss-of-earning-capacity element, we determine whether the remaining, unchallenged elements support the $90,000 awarded by the jury.

##### (1) Medical care

Lynn Smith's documentary evidence showed $8,487 in medical costs. His physician, Dr. Johnston, testified Lynn Smith needed surgery to remove a disc, costing between $19,000 and $32,000, and also recommended a fusion, costing between $12,000 and $20,000. Dr. Johnston's fees for treating Lynn Smith were $1,940. Thus, the evidence justified a jury award of $62,427 of the $90,000 total for medical care damages.

##### (2) Physical pain and mental anguish

Lynn Smith testified the pain in his back felt like someone trying to break his arm. He complained of the pain to the hospital staff while in Houston for three days, and again to Dr. Johnston, who prescribed physical therapy and cortisone injections, which Smith described as painful. Neither the injections nor the physical therapy relieved the pain. Lynn Smith's occasional good days, when he felt well and functioned normally, would be followed by days when he could do nothing.

Dr. Johnston testified Lynn Smith suffered from steadily worsening neck and back pain. Dr. Johnston described the neck pain as an aching, cramping discomfort that radiated into the right arm, and the back pain as severe, worsening, and radiating into the right leg. Sitting, bending, lifting, bowel movements, attempted intercourse, coughing, and sneezing aggravated the back pain. Dr. Johnston described the pain as consistent with Lynn Smith's MRI. After the surgery Dr. Johnston recommends, Smith will require six to 12 weeks of therapy and four to six weeks of limited activity. He will be restricted indefinitely to sedentary or light duty, lifting no more than 20 pounds, must avoid repetitive bending or twisting, and may sit for no more than 25 to 30 minutes. He will have a back condition "for the rest of his life." Based on this evidence, the jury could have assessed either the entire $90,000 or a minimum of $27,573 (the difference between the $62,427 in medical care expenses and the total $90,000 awarded to Lynn Smith) for his physical pain and mental anguish.[12] *See Wagnon*, 979 S.W.2d at 352–53.

Taking into consideration this evidence, the "if any" and "resulting from" instructions, and the instruction to consider each

---

12. "[W]hen the elements of actual damages considered by the jury include the more amorphous, discretionary damages, e.g., mental anguish, pain and suffering, physical impairment and disfigurement, any amount awarded above the more definitive damages, such as past medical expenses and lost wages, will be shunted to the discretionary domain of the jury." *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.— Corpus Christi 1993, writ denied).

element separately, we conclude the trial court's including the element of loss of earning capacity in the damages question for Lynn Smith was not reversible error.

We overrule Harris County's first issue.

#### b. $3,100 Damages to Erica Smith

■ The jury awarded Erica Smith $3,100 in total damages in a question that included three elements: physical pain and mental anguish; physical impairment; and medical care. As addressed above, the trial court erred by including the element of physical impairment.

##### (1) Medical records

Erica Smith produced medical records for $2,024.83 in medical expenses. Subtracting this amount from the total awarded leaves a remainder of $1075.17.

##### (2) Physical pain and mental anguish

Erica Smith was four months pregnant when the accident happened. She complained of abdominal and back pain immediately after the accident and up until about two months after the child was born. As addressed above, the Smith children collided during the accident. One bled from the mouth, and both cried for hours. The jury could have relied on this evidence in awarding either the remaining $1075.17 or the entire $3,100 for Erica Smith's physical pain and mental anguish. *See Wagnon,* 979 S.W.2d at 352–53; *Zrubeck,* 850 S.W.2d at 589.

Taking this evidence into consideration, as well as the "if any" and "resulting from" instructions and the instruction to consider

each element separately, we conclude the trial court's including the element of physical impairment in the damages question for Erica Smith was not reversible error.

We overrule Harris County's third issue.

### Legal and Factual Sufficiency

■ Harris County's fourth issue challenges the legal and factual sufficiency of the evidence to support the $90,000 awarded Lynn Smith as damages.[13] Although the jury charge reinforced the necessary causal connection between the accident and any damages awarded,[14] Harris County contends the evidence fails to show the requisite causal connection.

■ We apply the usual standards of review. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988) (legal sufficiency: examining the record for evidence that tends to support the finding, while disregarding all evidence and inferences to the contrary); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (factual sufficiency: determining, in light of the entire record, whether the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust). The plaintiff must produce evidence from which the jury may reasonably infer that the damages sought result from the conduct of the defendant. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 181 (Tex.1995).

Harris County contends the Smiths did not properly establish causation because Dr. Johnston did not adequately address

---

13. Because Harris County attacks the entire damages finding, and not merely a specific damage element included within the broad-form submission question, we may properly address this argument. *See Thomas,* 895 S.W.2d at 360.

14. The damages question, which was conditioned on a finding of negligence in response to the liability question, asked what sum would reasonably compensate Lynn Smith "for his damages, if any, *resulting from* the occurrence in question." (Emphasis added.) In addition, the liability question asked whether the negligence of Robert Spurgeon or Lynn Smith "*proximately cause[d]* the occurrence in question." (Emphasis added.)

Lynn Smith's pre-existing back condition, which resulted from an earlier accident and operation in 1993. Harris County relies on *Texarkana Memorial Hosp., Inc. v. Murdock*, 946 S.W.2d 836 (Tex.1997).

*Murdock* involved claims against a hospital for not properly treating a newborn child for meconium aspiration and its effects, but the record showed treatment for other, birth-defect conditions as well. *Id.* at 837. While legally sufficient evidence linked some damages to treatment of the newborn for meconium aspiration, the total award exceeded the damages attributable to that treatment, and no testimony segregated those damages from the costs of other treatment. *Id.* at 839–40. In reversing and remanding for a new trial, the supreme court held the plaintiff should recover "only for medical expenses specifically shown to result from the treatment made necessary by the negligent acts or omissions of the defendant." *Id.* at 840–41. Harris County claims the rule applies here, because Lynn Smith's physician, Dr. Johnston, did not take Smith's pre-existing back condition into consideration. Harris County relies on the following cross-examination of Dr. Johnston, in which he conceded he was not aware until just before his deposition, that Lynn Smith incurred a back injury in an earlier accident:

Q: Are you able to give an opinion, Dr. Johnston, without having the benefit of these earlier records to say what percentage of his [Lynn Smith's] present-day problems are directly attributable to the automobile collision with the sheriff's deputy in June of 1994?

A: Before I came here today and received all this new information, I thought one hundred percent of his L4–5 problems were due to the recent accident. Now, after having seen that he had previous surgery L4–5—

Q: That I provided to you for the first time today.

A: —that you provided to me for the first time today, he had a previous surgery at L4–5, I'm still not sure exactly what that surgery was but I'm certain it was on the left side and not the right side. I'm still of the opinion that something happened between June 30th, 1993 and October 1994 that caused a right-sided L4–5 disc herniation. And if there was a[n] impact and shortly after that impact he began having increasing back pain and right leg pain, I would still be one hundred percent sure it's directly related to that impact. Because there's no way he would have known that all of a sudden now I have a right L4 problem on my MRI unless he was really having those symptoms.

Q: Yeah. And I'm not suggesting that those symptoms are not confirmed by your objective test. My inquiry goes to when they first existed more so than whether they exist or not. I'm not ever suggesting that they never existed.

A: Some time after June 30th, 1993.

Q: And that also could be before June of 1994, correct?

A: Yes.

Harris County offers this testimony to demonstrate that the Smiths' own expert acknowledged a pre-existing condition he had not taken into consideration in attributing Lynn's Smith condition to the 1994 collision. In the same excerpt, however, Dr. Johnston stated he was "one hundred percent sure" Lynn Smith's disc herniation was attributable to the impact in the 1994 collision. Moreover, by comparing a CAT scan from 1993 with an MRI performed

after the collision, Dr. Johnston found no damage to the right side of Smith's L4–5 disc in 1993, while the 1994 MRI showed right-sided disc herniation. In contrast to *Murdock,* Dr. Johnston excluded the possibility that Lynn Smith's damages were attributable to other causes by testifying that the 1993 injury did not contribute to the injuries sustained in 1994. This testimony is legally sufficient to support the requisite causal link to the collision and, in context, does not undermine Smith's evidence of causation.

We overrule Harris County's fourth issue.

### Conclusion

We affirm the judgment of the trial court.