IN THE SUPREME COURT OF 
TEXAS


No. 01-0007

Golden Eagle Archery, 
Inc.  

v.
  
Ronald Jackson  




On Petition for Review from the


Court of Appeals for the Ninth District of Texas





Argued on October 16, 2002

Justice Owen delivered the opinion of the Court, in which Chief Justice 
Phillips, Justice Hecht, Justice Enoch, Justice Smith, and Justice Wainwright 
joined.
Justice O'Neill filed a concurring opinion, in which Justice Schneider 
joined.
Justice Jefferson did not participate in the decision.
In this case, we resolve how courts of appeals are to conduct a factual 
sufficiency review when 1) a jury is permitted to award damages for elements 
that somewhat overlap, 2) the jury is instructed not to duplicate an award for 
any particular loss, and 3) the jury awards no damages or damages that are 
allegedly inadequate for an element that could overlap with another.
Because the court of appeals in this case did not properly apply the standard 
of review set forth in Pool v. Ford Motor Co., 
(1) and because this Court has never before articulated the standard 
for factual sufficiency review when evidence pertains to more than one category 
of damages, we reverse the court of appeals' judgment 
(2) and remand this case to that court for another factual sufficiency 
review.

I

This is the second time that this case has been before our Court. In our 
prior decision, 
(3) we considered alleged juror misconduct and whether Texas Rule of 
Civil Procedure 327(b) and Texas Rule of Evidence 606(b), limiting proof of 
juror misconduct, are constitutional. We held that there was no competent 
evidence of juror misconduct and that Rules 327(b) and 606(b) neither deprive 
litigants of a fair trial under the Texas Constitution nor fail to afford 
litigants due process. 
(4) We remanded the case to the court of appeals to consider issues it 
had not reached. 
(5) On remand, the court of appeals held that the jury's failure to 
award any damages for a category of physical impairment was so against the great 
weight and preponderance of the evidence that the zero damages award was 
manifestly unjust and required a new trial. 
(6) Our focus is on that issue.
Ronald Jackson received a compound hunting bow manufactured by Golden Eagle 
Archery as a gift from his wife. When she presented it to him, he attempted to 
demonstrate how it is used. The bow went out of control, and the metal rod that 
separated the bow string from the cables struck Jackson in the eye. He bled 
profusely, required emergency treatment at one hospital, was transferred to 
another hospital for additional treatment, and spent ten days there. He suffered 
broken bones around the orbit of his eye, some loss of vision, a ruptured sinus, 
and a broken nose. Upon discharge he was instructed to limit activities to avoid 
straining or lifting. About a month later, he underwent surgery to repair the 
orbital fractures and other reconstructive surgery and was hospitalized an 
additional three days. Jackson was unable to work for about two months after the 
date of the accident with the bow. He returned to work thereafter, but has some 
permanent impairment to his eye and vision, and some disfigurement. 
Jackson sued Golden Eagle, alleging that the bow was defectively designed and 
marketed. The jury failed to find a design defect, but found that Golden Eagle 
did not give adequate warnings of the product's danger. A single damage question 
was submitted in which the jury was permitted to award damages in six separate 
categories. They awarded $25,393.10 for medical care, $2,500 for physical pain 
and mental anguish, $2,500 for "physical impairment of loss of vision," $0 for 
"physical impairment other than the loss of vision," $1,500 for disfigurement, 
and $4,600 for loss of earnings in the past.
The trial court rendered judgment on the verdict in favor of Jackson, and 
Jackson appealed. As we have already described above, the court of appeals 
reversed the trial court's judgment after concluding that two of our rules of 
procedure were unconstitutional. We reversed the court of appeals and remanded 
other, unresolved issues to that court. Following that remand, the court of 
appeals considered Jackson's contention that he was entitled to a new trial 
because the jury's failure to award any damages for "physical impairment other 
than loss of vision" was against the great weight and preponderance of the 
evidence. Jackson also contended that the jury's awards for physical pain and 
mental anguish, physical impairment because of loss of vision, and disfigurement 
were inadequate and required a new trial. The court of appeals agreed with 
Jackson regarding the award of no damages for physical impairment other than 
loss of vision. It remanded the case for a new trial and therefore did not reach 
Jackson's other issues on appeal.
Golden Eagle filed a petition for review in our Court. We granted that 
petition to consider the proper standard to be applied in conducting a factual 
sufficiency review of a jury's failure to award any damages for physical 
impairment.

II

Although this Court does not have jurisdiction to conduct a factual 
sufficiency review, we do have jurisdiction to determine whether a court of 
appeals has applied the correct standard in conducting a factual sufficiency 
review. 
(7) It is a familiar principle that in conducting a factual 
sufficiency review, a court must not merely substitute its judgment for that of 
the jury. 
(8) It is an equally familiar principle that the jury is the sole 
judge of the credibility of witnesses and the weight to be given to their 
testimony. 
(9)
We held in Pool v. Ford Motor Co. that in order for this Court to 
conduct a meaningful review of whether a court of appeals has correctly applied 
the factual sufficiency standard, courts of appeals "should, in their opinions, 
detail the evidence relevant to the issue in consideration and clearly state why 
the jury's finding is factually insufficient or is so against the great weight 
and preponderance as to be manifestly unjust; why it shocks the conscience; or 
clearly demonstrates bias." 
(10) Pointedly, we added, "[f]urther, those courts, in their opinions, 
should state in what regard the contrary evidence greatly outweighs the evidence 
in support of the verdict. It is only in this way that we will be able to 
determine if the requirements of In re King's Estate have been 
satisfied." 
(11) We held in In re King's Estate that a court of appeals 
must
consider and weigh all of the evidence in the case and to set aside the 
verdict and remand the cause for a new trial, if it thus concludes that the 
verdict is so against the great weight and preponderance of the evidence as to 
be manifestly unjust-this, regardless of whether the record contains some 
"evidence of probative force" in support of the 
verdict. . . .  The evidence supporting the verdict is to be 
weighed along with the other evidence in the case, including that which is 
contrary to the verdict. 
(12)

Before a court can properly conduct a factual sufficiency review, it must 
first have a clear understanding of the evidence that is pertinent to its 
inquiry. The starting point generally is the charge and instructions to the 
jury. In this case the jury was instructed and answered as follows:
What sum of money, if paid now in cash, would fairly and reasonably 
compensate Ronald Jackson for his damages, if any, that resulted from the injury 
in question?
Consider the elements of damages listed below and none other. Consider each 
element separately. Do not include damages for one element in any other element. 
Do not include interest on any amount of damages you find.
Do not reduce the amounts, if any, in your answers because of the negligence, 
if any, of Ronald Jackson.
Answer in dollars and cents for damages, if any, that were sustained in the 
past and that in reasonable probability will be sustained in the future, unless 
otherwise instructed.
Answer:
a. Medical care $25,393.10
b. Physical pain and mental anguish $2,500.00
c. Physical impairment of loss of vision $2,500.00
d. Physical impairment other than loss of vision $0
e. Disfigurement $1,500.00
f. Loss of earnings in the past $4,600.00
The only definition that was given regarding this question was a definition 
of "injury" that said: "'Injury' means damage or harm to the physical structure 
of the body and such diseases or infection as naturally result therefrom, or the 
incitement, acceleration, or aggravation of any disease, infirmity, or 
condition, previously or subsequently existing, by reason of such damage or 
harm." "Physical impairment" was not defined, nor were any of the other listed 
categories of damages. 
Jackson does not challenge the jury's findings regarding medical care and 
loss of past earnings. The jury awarded the full amounts he requested in those 
categories. It is the non-economic damages that are at issue. The court of 
appeals addressed only the jury's failure to award damages for "Physical 
impairment other than loss of vision." The court of appeals concluded that the 
failure to award damages in this category was against the great weight and 
preponderance of the evidence because "Jackson sustained multiple fractures to 
his face; four of the seven bones that make up the orbit of the eye were 
fractured. . . . [H]e sustained a ruptured sinus and a broken nose. 
. . . [H]e remained [in the hospital] for ten days . . . . 
Thirty-seven days elapsed from the date of the accident . . . until 
the injuries to his face were repaired," and he had headaches up until the time 
of trial. 
(13) 
Jackson's arguments in this Court focus more directly on the "loss of 
enjoyment of life" he suffered while hospitalized and recuperating. 
Specifically, Jackson's brief says:
The injury to [Jackson's] orbital area, nose and sinuses resulted in his 
hospitalization for ten days immediately following the accident and then for 
another three days for surgery to repair the broken orbital bones, nose and 
ruptured sinus. These objective injuries did not allow [Jackson] to enjoy any of 
his normal life activities during the time of his hospitalizations. Moreover, 
the pain medication prescribed for Jackson kept him "zombied out" most of the 
time between the first and second hospitalizations. The normal life activities 
impaired by these injuries include enjoyment of home life activity with family, 
socializing with friends such as he was doing when he was injured, enjoying the 
bow which he had looked forward to having and the bow hunting season which he 
was wanting to do and had brought on the desire for the bow in the first 
place. . . .  The disability of [Jackson] was obvious form 
[sic] the injuries themselves and did not require Jackson to produce evidence to 
show the tasks that he could not do during the periods of his hospitalizations 
and the time in between the hospital stays. . . . A person that is 
hospitalized with traumatic injuries cannot engage (at least for the time of 
hospitalization) in his or her normal life activities outside of work and 
consequently suffers loss of physical impairment [sic]. 
(14)
In reviewing the record evidence, the court of appeals generally focused on 
physical injuries while Jackson focuses on what are sometimes called "hedonic 
damages." 
(15) Our first inquiry is to determine whether the evidence recounted 
by the court of appeals and relied upon by Jackson pertains to "physical 
impairment other than loss of vision," to some other category of damage that was 
submitted to the jury, or both. For the reasons we consider below, we conclude 
that this evidence pertains to more than one of the categories that were 
submitted, particularly in light of the fact that neither "physical impairment" 
nor any of the other damage elements were defined. Our second inquiry is how a 
factual sufficiency review should be conducted given that overlapping elements 
of damages were submitted and the jury was instructed not to award damages for 
the same loss more than once.

III

When someone suffers personal injuries, the damages fall within two broad 
categories - economic and non-economic damages. Traditionally, economic damages 
are those that compensate an injured party for lost wages, lost earning 
capacity, and medical expenses. Non-economic damages include compensation for 
pain, suffering, mental anguish, and disfigurement. "Hedonic" damages are 
another type of non-economic damages and compensate for loss of enjoyment of 
life. 
(16)
This Court has never considered the historical origins of the term "physical 
impairment" or its parameters in any detail. But Texas courts, including this 
one, have long recognized that "physical impairment" or similar concepts could 
encompass both economic and non-economic damages. 
(17) Early Texas decisions seemed to recognize that while an injured 
party was entitled to a full recovery, care should be taken to prevent a double 
recovery when instructions are given to a jury. Courts of appeals have been 
conscious of these concerns. In Robinson v. Minick, the court observed, 
"[t]he intermediate appellate courts have shown extreme caution in reviewing 
claims for physical impairment because of justified concern to prevent a double 
recovery." 
(18) That same court lamented, "[o]ur review of this difficult area of 
the law is hampered by the absence of supreme court authority." 
(19)
The only guidance our Court has given since our early decisions was in 
Estrada v. Dillon. 
(20) There we considered whether a court of appeals had properly 
conducted a factual sufficiency review of evidence of damages due to physical 
impairment. 
(21) The jury had awarded damages for past physical pain and mental 
anguish, past loss of earnings, and past medical care. The jury did not award 
any damages for future physical pain and mental anguish, future medical care, 
future loss of earning capacity, past or future physical impairment, or past or 
future disfigurement. 
(22) The court of appeals reversed the trial court's judgment and 
remanded the case, concluding that the failure to award any damages for past 
physical impairment required a new trial. 
(23) The court of appeals did not reach the plaintiffs' contention 
that the failure to award damages for other elements also required reversal. 
(24) We found no error in the factual sufficiency review, but we did 
hold that the court of appeals erred in remanding for a new trial solely on 
damages. 
(25) We did not analyze in any detail the history of physical 
impairment, but instead focused on whether a jury must award damages for past 
physical impairment if there was objective evidence of an injury. 
(26) We "assumed" that the defendants' definition of physical 
impairment was correct. We said: "Assuming that [the defendants] are correct 
that evidence of physical impairment must focus on restriction of activities 
caused by the injury, the court of appeals' analysis in this case is not 
inconsistent with that focus. The court of appeals did not hold that proof of 
objective injury alone establishes physical impairment." 
(27) Today, we examine more carefully what evidence relates to 
physical impairment, the potential for double recovery, and how a factual 
sufficiency review should be conducted.
The courts of appeals have recognized that physical impairment can encompass 
economic as well as non-economic damages. 
(28) A number of those courts have attempted to separate physical 
impairment from economic damages by defining physical impairment to exclude any 
impediment to earning capacity and also to separate physical impairment from the 
non-economic damages of pain and suffering. Over the last thirty years, a number 
of courts of appeals have said, 
(29) as the court of appeals in the case before us today said, that 
"[t]o recover damages for physical impairment, a plaintiff must prove 'that the 
effect of his physical impairment extends beyond any impediment to his earning 
capacity and beyond any pain and suffering to the extent that it produces a 
separate and distinct loss that is substantial and for which he should be 
compensated.'" 
(30)
The genesis of this definition of "physical impairment" is not entirely 
clear. And the courts of appeals have not been entirely congruent in applying 
that term to particular facts. Most of the Texas cases that have addressed 
physical impairment have concluded either explicitly or implicitly that the 
injury must be permanent and affect physical activities. 
(31) There are some decisions, though, that seem to have concluded 
that temporary injuries can give rise to physical impairment. 
(32) In Estrada v. Dillon, this Court seems to have agreed 
with a court of appeals that evidence of temporary injuries could amount to 
evidence against the great weight and preponderance when a jury failed to award 
any damages for past physical impairment. 
(33)
The courts of appeals are in far greater disagreement, however, on whether 
"physical impairment" encompasses hedonic damages, that is, the "loss of 
enjoyment of life." There are three possibilities. Loss of enjoyment of life 
could be encompassed entirely by "physical impairment," not encompassed in that 
term at all, or spill across physical impairment as well as other categories of 
damage. Other than this Court's early, tangential ruminations in 
International & G. N. Railway Co. v. Butcher, 
(34) mentioned above, we have never decided whether loss of enjoyment 
of life can be an element of recovery.
A very early court of appeals' decision, Locke v. International & G. 
N. R. Co., indicated there could be no recovery for loss of enjoyment of 
life. 
(35) It held that there was no error in excluding testimony about 
"loss of capacity for 'the enjoyment of pleasures of life'" because the concept 
was "too vague to furnish any information upon a definite subject upon which 
damages would arise or be allowed." 
(36) We have found no other court of appeals decision in Texas that 
ascribes to this view.
Subsequently, a court of appeals recognized that the inability to have a 
normal life is compensable. In Dr. Pepper Bottling Co. v. Rainboldt, 
(37) a delivery truck struck a young girl. The defendant argued on 
appeal that the trial court allowed a double recovery because "physical pain and 
anguish are involved in bodily impairment." 
(38) The court of appeals rejected that argument, pointing out that 
the trial court had defined bodily impairment as "the loss or injury of a 
member." 
(39) The court explained that there was, of course, pain incident to 
such a loss, but that it was separate. 
(40) The court continued:
To illustrate, a man might lose his leg; that would be a bodily impairment. 
In connection with the loss of the leg, he might suffer at the same time pain 
and anguish. The wound might heal and the pain and anguish disappear, but the 
bodily impairment, to wit, the loss of the leg, would remain. The evidence [in 
Dr. Pepper] supports the element of bodily impairment. Her bladder is 
permanently injured. She will not be able to bear children. Her injuries are 
permanent. 
(41)
Under this reasoning, recovery for loss of a member could include the mental 
anguish for the loss of bodily functions, separate and apart from the pain and 
anguish experienced during recuperation, and could also include the loss of the 
ability to have, nurture, and enjoy children.
Other Texas courts of appeals' opinions that have considered loss of 
enjoyment of life have agreed on at least two things. First, a factfinder should 
be free to compensate an injured party who is physically impaired to the extent 
that party may no longer engage in or enjoy activities that he or she was able 
to do before the injury. Second, Texas courts of appeals have uniformly held 
that loss of enjoyment of life is not a separate category of damage, 
(42) which is in accord with a number of other jurisdictions. 
(43) Beyond this, the courts of appeals' decisions diverge.
The Texarkana court of appeals said in Missouri Pacific Railroad Co. v. 
Lane that "[l]oss of enjoyment of life may not be claimed as a separate 
element of damages, but may be treated as a factor in determining the damages in 
general or those for pain and suffering." 
(44) It reiterated this view in Fibreboard Corp. v. Pool. 
(45) The Corpus Christi court of appeals in Spohn Hospital v. 
Mayer seemed to agree with Lane and Fibreboard, 
concluding that "[e]vidence of a loss of enjoyment of life may be considered in 
determining damages in general or for pain and suffering." 
(46) However, the Tyler court of appeals' analyses do not agree 
entirely with the Texarkana and Corpus Christi courts. In Brookshire 
Brothers, Inc. v. Wagnon, the Tyler court suggested that "certainly the 
loss of enjoyment of life, which encompasses the loss of the injured party's 
former lifestyle, may be considered when determining mental anguish damages." 
(47) In Wal-Mart Stores, Inc. v. Holland, that court said 
that "physical impairment, sometimes termed loss of enjoyment of life, 
encompasses the loss of the injured party's former lifestyle." 
(48) The Fourteenth District court of appeals in Houston seems to have 
agreed with the latter view of the Tyler court, holding that "[p]hysical 
impairment, sometimes called loss of enjoyment of life, encompasses the loss of 
the injured party's former lifestyle." 
(49) A dissenting opinion in the San Antonio court of appeals 
contended that loss of enjoyment of life should be categorized as part of mental 
anguish damages. 
(50) Thus, loss of enjoyment of life has variously been categorized as 
an element of pain and suffering, mental anguish, or physical impairment.
The divergence of views is understandable. Courts across the country have 
struggled with whether loss of enjoyment of life is compensable at all, and if 
so, whether it is part of pain and suffering, mental anguish, or physical 
impairment, or is a separate, independent category of damages. 
(51) And, as indicated above, there is a logical nexis between loss of 
enjoyment of life and each of the categories of non-economic damages recognized 
in Texas -- pain, suffering, mental anguish, disfigurement, and physical 
impairment.
The widely disparate views of courts in Texas and across the country lead us 
to conclude that in the case before us today, the court of appeals should not 
have applied the definition of "physical impairment" so frequently quoted by 
Texas courts of appeals in considering the factual sufficiency of the 
evidence. 
(52) The court of appeals said, "[t]o recover damages for physical 
impairment, a plaintiff must prove 'that the effect of his physical impairment 
extends beyond any impediment to his earning capacity and beyond any pain and 
suffering to the extent that it produces a separate and distinct loss that is 
substantial and for which he should be compensated.'" 
(53)
First, that definition does not fully eliminate the overlap among physical 
impairment, pain, suffering, mental anguish, and disfigurement. Nor does it give 
adequate guidance about whether the impairment must be the result of a permanent 
injury. Second, and more importantly, that definition was not given to the 
jury in this case. If courts across the country can rationally conclude 
that loss of enjoyment of life can be part of pain and suffering or mental 
anguish or disfigurement or physical impairment, then so can a jury. The jury in 
this case could have compensated Jackson for loss of enjoyment of life as part 
of physical pain and mental anguish, or disfigurement, or divided compensation 
in some manner between the two categories. The jury charge permitted the jury to 
make its own determination of how to categorize and compensate the losses 
suffered by Jackson.
The jury submission in this case comports with a practice suggested by some 
courts of appeals. Instead of defining damage categories for juries in such a 
way that they do not overlap, which we recognize may not be feasible for some 
damage elements, some courts of appeals have concluded that to avoid double 
awards of damages, particularly when physical impairment is submitted, juries 
should be directly instructed not to award overlapping damages. 
(54) The decision in French v. Grigsby 
(55) approved such an instruction in affirming the trial court's 
judgment awarding damages for physical impairment:
In answering this special issue you shall not award any sum of money on any 
element if you have otherwise, under some other element, awarded a sum of money 
for the same loss, that is, do not compensate twice for the same loss, if any. 
(56)
This type of instruction informs the jury that it is not to make a 
duplicative award of damages. In this regard, we note that the trial court in 
the case before us today followed the State Bar of Texas Pattern Jury Charge to 
some extent, 
(57) which uses language different from the instruction in 
French. The trial court's charge said: "Consider the elements of 
damages listed below and none other. Consider each element separately. Do not 
include damages for one element in any other element." The instruction in 
French is clearer.
Given that some of the categories of damages submitted to the jury in this 
case were not defined and therefore were not cleanly and clearly segregated from 
one another, the question, then, is how should the court of appeals review the 
factual sufficiency of the evidence supporting the jury's award for physical 
impairment. It is to that question that we now turn.

IV

The charge in this case permitted the jury to award separate amounts of 
damages in six different categories. The standard of review to determine factual 
sufficiency of the evidence that we set forth today differs from the standard of 
review that is applied when the jury is asked to award a single amount of 
damages, but is told that it may consider various elements in arriving at that 
amount. 
(58) In the latter circumstance, we have held that a challenge must 
address all the elements that could have been considered by the jury in making 
its total, single-amount award. 
(59) "If there is just one element that is supported by the evidence, 
the damages award will be affirmed if it is supported by the evidence." 
(60)
In the case before us, the jury had six blanks to fill and was instructed not 
to award damages for the same element more than once. Unless the record 
demonstrates otherwise, an appellate court must presume that the jury followed 
these instructions. 
(61) In conducting its factual sufficiency review, the court of 
appeals should presume that the jury did not award damages to Jackson for any 
element more than once, unless the record demonstrates otherwise. Accordingly, 
in reviewing the evidence, the court of appeals should consider whether the jury 
could reasonably have compensated Jackson for a particular loss that might be 
"physical impairment other than loss of vision" under another category of 
damages. If the jury could have done so, then the failure to award damages for 
that particular loss would not be against the great weight and preponderance of 
the evidence.
The court of appeals should first consider what evidence is unique to 
"physical impairment other than loss of vision." In this regard, the bone 
fractures, ruptured sinus, and broken nose sustained by Jackson are the typical 
type of physical injury for which a jury could reasonably compensate an injured 
party through an award for physical pain and mental anguish. Evidence of 
Jackson's headaches could also logically fall either within "physical impairment 
other than loss of vision," for which the jury awarded no damages, or within 
past and future physical pain and mental anguish, for which the jury did award 
damages. 
The evidence regarding Jackson's hospital confinements and his alleged loss 
of enjoyment of life for the two months he was recuperating present a more 
complex question. A number of decisions in other jurisdictions indicate that 
loss of enjoyment of life results from permanent rather than temporary 
injuries, 
(62) although a few decisions indicate otherwise. 
(63) Particularly in light of the availability of damages in other 
categories, such as pain, suffering, and mental anguish to compensate for a 
temporary inability to enjoy life's activities, a jury could reasonably conclude 
that hedonic damages should be awarded only for permanent injuries. To the 
extent that our decision in Estrada v. Dillon 
(64) could be read to hold otherwise, we did not focus on that 
specific issue, as we now have done. As the Supreme Court of Michigan has 
observed, "the pangs of separation from family during hospitalization may be 
taken into account as a part of the injured person's mental suffering." 
(65) The Supreme Court of Alaska has also categorized "a substantial 
amount of time convalescing in the hospital" as evidence of pain and 
suffering. 
(66) But whether to award damages and how much is uniquely within the 
factfinder's discretion. 
We are persuaded that in the proper case, when the evidence supports such a 
submission, loss of enjoyment of life fits best among the factors a factfinder 
may consider in assessing damages for physical impairment. Indeed, if other 
elements such as pain, suffering, mental anguish, and disfigurement are 
submitted, there is little left for which to compensate under the category of 
physical impairment other than loss of enjoyment of life. Accordingly, if 
"physical impairment" is defined for a jury, it would be appropriate to advise 
the jury that it may consider as a factor loss of enjoyment of life. But the 
jury should be instructed that the effect of any physical impairment must be 
substantial and extend beyond any pain, suffering, mental anguish, lost wages or 
diminished earning capacity and that a claimant should not be compensated more 
than once for the same elements of loss or injury. 
In the case before us today, no definition of "physical impairment" was given 
or requested. Without any definition to guide it, the jury could have concluded 
that Jackson's temporary injuries resulted in compensable loss of enjoyment of 
life. However, the jury could reasonably have decided to compensate Jackson for 
the time he spent hospitalized and recuperating, during which he was unable to 
enjoy recreational activities, under the category of physical pain and mental 
anguish. Or, the jury could have decided that Jackson should not recover any 
hedonic damages for his temporary injuries. If a court of appeals were to base 
its decision on the sufficiency of the evidence to support the jury's failure to 
award damages for one category of damages (or its failure to award larger 
damages) on evidence that the jury could have credited in making an award for 
other damage elements, then the court of appeals would be substituting its 
judgment for that of the jury in evaluating in which category, if any, the 
injured party should have been compensated. A court of appeals should therefore 
confine its review to evidence, if any, that is unique to the challenged 
category. If the jury's failure to award damages or the amount of damages 
awarded is so against the great weight and preponderance of the evidence as to 
be manifestly unjust, shock the conscience, or clearly demonstrate bias, then a 
new trial would be required. 
If only one category of the jury's award is challenged, and the award in that 
category is not against the great weight and preponderance of the evidence 
unique to it, the court's inquiry should end there. A court should not consider 
losses or injuries for which the jury could have compensated the injured party 
under a different category unless a factual sufficiency challenge is made to all 
overlapping categories of damages. Otherwise, an injured party could receive an 
adequate award for all injuries and losses sustained when a jury chooses to 
compensate for injuries or losses in the categories of pain, suffering or mental 
anguish, rather than physical impairment, and the injured party would still get 
a new trial by challenging only the jury's award under physical impairment.
In this case, Jackson has challenged the factual sufficiency of the jury's 
failure to award larger damages in the categories of physical pain and mental 
anguish, physical impairment of loss of vision, and disfigurement, as well as 
the award of no damages for "physical impairment other than loss of vision." The 
court of appeals should conduct a review of each of these categories, 
considering the evidence unique to each category. If, after considering evidence 
unique to a category, the court concludes that the jury's failure to award 
larger damages for that category is against the great weight and preponderance 
of the evidence, it should then consider all the overlapping evidence, together 
with the evidence unique to each other category to determine if the total amount 
awarded in the overlapping categories is factually sufficient. This takes into 
account all the evidence regarding damages in categories that overlap, but does 
not credit that evidence more than once in evaluating the amount awarded by the 
jury.
The necessary corollary to these principles is that in reviewing a challenge 
that an award for a category is excessive because there is factually 
insufficient evidence to support it, a court of appeals should consider all the 
evidence that bears on that category of damages, even if the evidence also 
relates to another category of damages. To do otherwise would mean that evidence 
that reasonably could have supported the jury's award would not be considered, 
which would be improper. If more than one award in overlapping categories is 
challenged as excessive, the court of appeals should consider all the evidence 
that relates to the total amount awarded in all overlapping categories to 
determine if the total amount awarded was excessive. This likewise gives full 
effect to all the evidence without crediting any of the evidence more than 
once.
Golden Eagle contends that the court of appeals concluded that the jury was 
required to award damages for "physical impairment other than loss of vision" 
solely on the basis that there was objective evidence of physical injury. In 
this regard the court of appeals said that it found the decision in Robinson 
v. Minick 
(67) "instructive." 
(68) The injured party in Robinson had facial fractures, 
surgery, and spent a month in the hospital. The court in Robinson held 
that "when we apply settled law that requires a jury to award something for 
every element of damage proven, to the undisputed, objective evidence of severe 
physical impairment in the past, we cannot escape the conclusion that the jury's 
finding of $0 is against the great weight and preponderance of the evidence." 
(69) Similarly, the court of appeals in this case held that "[t]here 
is nothing subjective or conflicting about the evidence of the broken bones 
around [Jackson's] eye, the broken nose, or ruptured sinus" and that these 
"injuries are demonstrative of impairment beyond pain and suffering, loss of 
earning capacity, and loss of vision." 
(70) 
In keeping with the principles that a court may not substitute its judgment 
for that of the jury and that the jury is the sole judge of the weight and 
credibility of testimony, courts should not conclude that a jury's failure to 
award any damages for physical impairment is against the great weight and 
preponderance of the evidence simply because there is objective evidence of an 
injury. The courts of appeals in Landacre v. Armstrong Building Maintenance 
Co. 
(71) and Platt v. Fregia 
(72) both concluded that a jury's failure to award damages for 
physical impairment was not against the great weight and preponderance of the 
evidence even though the plaintiffs in those cases had some permanent functional 
loss of a part of their body. In Landacre, the plaintiff had a frozen 
shoulder and her normal range of motion decreased to 50%. In Platt, the 
plaintiff lost 30% function in his knee. The jury in each case had awarded 
amounts in other categories of non-economic damages. The court in 
Landacre concluded that "[t]he determination that the appellant has not 
and will not suffer physical impairment apart from that already compensated for 
is uniquely within the jury's province." 
(73) 
Similarly, in Pilkington v. Kornell, the court of appeals concluded 
that when a jury is presented with conflicting evidence about the existence and 
severity of a physical injury and associated pain, the jury "could believe all 
or any part of the testimony of any witness and disregard all or any part of the 
testimony of any witness." 
(74) The court upheld a jury's failure to award any damages for pain 
and suffering. 
(75) This does not mean, however, that a verdict awarding no damages 
for pain and suffering should be upheld on appeal if there is objective, 
undisputed evidence of a significant injury and the jury could not have 
compensated the injured party in some other category of damages.
In Monroe v. Grider, 
(76) the court of appeals properly drew a distinction between a jury's 
failure to award damages for pain and suffering when there was objective, 
undisputed evidence of injury and the jury's failure to award damages for mental 
anguish. In that case, the trial court had submitted physical pain and mental 
anguish in one issue. The jury failed to award any damages in that category, 
although the plaintiff had a fractured wrist and a sprained muscle in her groin 
that "temporarily prevented her from working and fully enjoying recreational 
activities." 
(77) The court of appeals held, "[u]ncontroverted evidence of an 
objective injury does not always require mental anguish damages," but the jury 
could not ignore uncontroverted evidence of injury in denying any recovery for 
past physical pain. 
(78)
To summarize the factual sufficiency standard of review that we adopt today, 
when only one category of damages is challenged on the basis that the award in 
that category was zero or was too low, a court should consider only whether the 
evidence unique to that category is so against the great weight and 
preponderance of the evidence as to be manifestly unjust, shock the conscience, 
or clearly demonstrate bias. When, as in this case, the jury's failure to find 
greater damages in more than one overlapping category is challenged, the court 
of appeals should first determine if the evidence unique to each category is 
factually sufficient. If it is not, the court of appeals should then consider 
all the overlapping evidence, together with the evidence unique to each 
category, to determine if the total amount awarded in the overlapping categories 
is factually sufficient.
This standard of review gives due regard to a jury's choice of whether and 
how to categorize and compensate for specific losses or injuries that could 
reasonably fall into more than one category of damages. It also advances the 
principles that a tort victim should be fully and fairly compensated, but that a 
double recovery should be avoided.
Additionally, in reviewing a jury's failure to award any damages, courts of 
appeals should apply the principles articulated in Pool v. Ford Motor 
Co. 
(79) In this case, the court of appeals did not detail the evidence 
that supported the jury's failure to award any damages for physical impairment 
other than loss of vision or state in what regard the contrary evidence greatly 
outweighed the evidence in support of the verdict, as our decision in 
Pool requires.

V

Finally, we consider Golden Eagle's contention that the trial court erred in 
submitting both "physical impairment of loss of vision" and "physical impairment 
other than loss of vision" as separate items of damage. Golden Eagle argues that 
submitting these elements violated Texas Rule of Civil Procedure 277. We need 
not decide whether Golden Eagle preserved this complaint for appeal because we 
conclude that there was no reversible error in the submission.
Rule 277 provides that "[i]n all jury cases the court shall, whenever 
feasible, submit the cause upon broad-form questions." 
(80) Although the trial court granulated physical impairment into two 
separate categories, Golden Eagle did not explain how it was harmed by this 
submission, particularly in light of the jury's award of "$0" for physical 
impairment other than loss of vision.

* * * * 

We reverse the judgment of the court of appeals and remand this case to that 
court for further proceedings.
___________________________
Priscilla R. Owen
Justice 

OPINION DELIVERED: September 11, 2003

1. 715 S.W.2d 629, 635 (Tex. 1986). 
2. 29 S.W.3d 925. 
3. Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 
362, 364 (Tex. 2000). 
4. Id. at 375. 
5. Id. 
6. 29 S.W.3d at 929. 
7. Pool v. Ford Motor Co., 715 S.W.2d 629, 634-35 
(Tex. 1986); see also Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 
1988) (plurality opinion); Id. at 145 (Phillips, C.J., concurring); 
In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). 
8. Pool, 715 S.W.2d at 635. 
9. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 
(Tex. 1982). 
10. Pool, 715 S.W.2d at 635. 
11. Id. 
12. 244 S.W.2d at 661. 
13. 29 S.W.3d at 929. 
14. Ronald Jackson's Brief on the Merits at 11-12, 13, 18 
(record citations omitted). 
15. The purported origin of the term "Hedonic damages" is 
discussed in Loth v. Truck-A-Way Corp., 70 Cal. Rptr. 2d 571, 573 n.1 
(Cal. Ct. App. 1998). 
16. See Peek v. Equip. Serv. Co. of San Antonio, 
779 S.W.2d 802, 803 (Tex. App.--San Antonio 1989, no writ); see also Mo. 
Pac. R.R. Co. v. Handley, 341 S.W.2d 203, 205 (Tex. Civ. App.--San Antonio 
1960, no writ) (concluding that damages for "mental anguish, severe and 
continued pain and suffering, disfigurement, embarrassment and inability to live 
a normal life" were not excessive when the plaintiff's fingers had been 
amputated and he was unable to grip anything or hunt and fish as he had in the 
past); but see Ramos v. Kuzas, 600 N.E.2d 241, 243 (Ohio 1992) (holding 
that "'[h]edonic losses' include the inability to perform the plaintiff's usual 
specific activities which had given pleasure to this particular plaintiff, such 
as playing golf, dancing, bowling, playing musical instruments, and engaging in 
specific outdoor sports," which must be distinguished from "[b]asic losses" or 
"disability losses" that "include the inability to perform the basic mechanical 
body movements of walking, climbing stairs, feeding oneself, and driving a 
car"). 
17. See Houston Transit Co. v. Felder, 208 S.W.2d 
880, 883-84 (Tex. 1948); Int'l & G. N. Ry. Co. v. Butcher, 84 S.W. 
1052, 1053 (Tex. 1905); Int'l-Great N. R.R. Co. v. King, 41 S.W.2d 234, 
236 (Tex. Comm'n App. 1931, holding approved); see also Dupont v. 
Preston, 9 P.3d 1193, 1197 (Colo. Ct. App. 2000) (physical impairment can 
result in pecuniary or nonpecuniary harm). 
18. 755 S.W.2d 890, 893 (Tex. App.--Houston [1st Dist.] 
1988, writ denied); see also Rosenboom Mach. & Tool, Inc. v. 
Machala, 995 S.W.2d 817, 825 (Tex. App.--Houston [1st Dist.] 1999, pet. 
denied). 
19. 755 S.W.2d at 893. 
20. 44 S.W.3d 558 (Tex. 2001). 
21. Id. at 561. 
22. Id. at 560. 
23. Estrada v. Dillon, 23 S.W.3d 422, 427-28 (Tex. 
App.--Amarillo 2000), rev'd in part, 44 S.W.3d 558 (Tex. 2001). 
24. Id. at 427. 
25. Estrada, 44 S.W.3d at 562 (citing Tex. R. app. 
P. 44.1(b)). 
26. Id. at 561. 
27. Id. 
28. See, e.g., Green v. Baldree, 497 
S.W.2d 342, 350 (Tex. Civ. App.--Houston [14th Dist.] 1973, no writ) (observing 
"[i]t would not be proper in every personal injury case to instruct the jury 
that it might consider loss of earning capacity, pain and physical impairment as 
separate elements of plaintiff's damage," but concluding that "in almost all of 
such cases, if not all of them, the defendant would be entitled, on request, to 
have the court submit a special instruction that would be calculated to prevent 
the jury from allowing a double recovery"); Santa Rosa Med. Ctr. v. 
Robinson, 560 S.W.2d 751, 760 (Tex. Civ. App.--San Antonio 1977, no writ) 
(reviewing charge that included physical pain and mental anguish, loss of 
earnings, and physical impairment, concluding that "[t]here is clearly a 
possibility of some overlapping and blending in the issues as submitted," but 
finding no reversible error); Mikell v. La Beth, 344 S.W.2d 702, 709 
(Tex. Civ. App.--Houston 1961, writ ref'd n.r.e.) (concluding that when physical 
impairment and diminished capacity to work and earn money were both submitted, 
"there was no necessary duplication of elements of damage. . . . 
But if we are mistaken in this, we are of the opinion that appellants' [point of 
error] nevertheless must be overruled because the objection made to the issue in 
the Trial Court did not specifically point out that there was any duplication in 
the elements of damage as submitted."). 
29. Blankenship v. Mirick, 984 S.W.2d 771, 777 
(Tex. App.--Waco 1999, pet. denied); Peter v. Ogden Ground Servs., 
Inc., 915 S.W.2d 648, 650 (Tex. App.--Houston [14th Dist.] 1996, no writ); 
Sharm, Inc. v. Martinez, 900 S.W.2d 777, 784 (Tex. App.--Corpus Christi 
1995, judgm't vacated); Pipgras v. Hart, 832 S.W.2d 360, 366 (Tex. 
App.--Fort Worth 1992, writ denied); Lawson-Avila Constr., Inc. v. 
Stoutamire, 791 S.W.2d 584, 599 (Tex. App.--San Antonio 1990, writ denied); 
Tri-State Motor Transit Co. v. Nicar, 765 S.W.2d 486, 493 (Tex. 
App.--Houston [14th Dist.] 1989, no writ); Robinson v. Minick, 755 
S.W.2d 890, 893 (Tex. App.--Houston [1st Dist.] 1988, writ denied); S. Pac. 
Transp. Co. v. Harlow, 729 S.W.2d 946, 950 (Tex. App.--Corpus Christi 
1987), writ dism'd, improvidently granted, 745 S.W.2d 320 (Tex. 1988); 
Landacre v. Armstrong Bldg. Maint. Co., 725 S.W.2d 323, 324 (Tex. 
App.--Corpus Christi 1986, writ ref'd n.r.e.); Baker Marine Corp. v. 
Herrera, 704 S.W.2d 58, 62 (Tex. App.--Corpus Christi 1985, writ ref'd 
n.r.e.); Allen v. Whisenhunt, 603 S.W.2d 242, 244 (Tex. Civ. 
App.--Houston [14th Dist.] 1980, writ dism'd); Browning v. Paiz, 586 
S.W.2d 670, 675 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.); 
French v. Grigsby, 567 S.W.2d 604, 607 (Tex. Civ. App.--Beaumont), 
writ ref'd n.r.e., 571 S.W.2d 867 (Tex. 1978); Santa Rosa Med. 
Ctr., 560 S.W.2d at 760; Green, 497 S.W.2d at 350. 
30. 29 S.W.3d at 928 (quoting Blankenship, 984 
S.W.2d at 777). 
31. See Rosenboom Mach. & Tool, Inc. v. 
Machala, 995 S.W.2d 817, 826-28 (Tex. App.--Houston [1st Dist.] 1999, pet. 
denied); Blankenship, 984 S.W.2d at 778 (concluding that evidence that 
plaintiff could no longer do aerobic exercises, she did not walk as well, her 
knees gave out, and her physician said likelihood of developing arthritis was 
much higher was sufficient to support award for physical impairment); 
Peter, 915 S.W.2d at 650; Lawson-Avila Constr., Inc., 791 
S.W.2d at 600 (noting that physician testified that 27-year-old plaintiff would 
have to restrict his activities for the rest of his life and his condition would 
become worse over time); Tri-State Motor Transit Co., 765 S.W.2d at 493 
(concluding that evidence of loss of ability to enjoy recreational sports 
supported award); S. Pac. Transp. Co., 729 S.W.2d at 950-51; 
Allen, 603 S.W.2d at 244 (observing that plaintiff could no longer 
engage in manual labor as an employee or for his own benefit, mow a lawn, or 
play basketball); Platt v. Fregia, 597 S.W.2d 495, 495-96 (Tex. Civ. 
App.--Beaumont 1980, writ ref'd n.r.e.); Browning, 586 S.W.2d at 675 
(observing that physician testified that condition of plaintiff's leg was 
permanent and the prognosis was poor, perhaps requiring amputation); 
French, 567 S.W.2d at 607-08; Santa Rosa Med. Ctr., 560 S.W.2d 
at 760 (concluding that evidence of partial paralysis, spasticity, difficulty 
focusing both eyes, slurring of words, and inability to perform any of the usual 
tasks of a working man supported award for physical impairment); Charles T. 
Picton Lumber Co. v. Redden, 452 S.W.2d 713, 723 (Tex. Civ. App.--Corpus 
Christi 1970, writ ref'd n.r.e.) (noting that plaintiff, a paraplegic, was 
permanently injured and would require braces, crutches, or a wheel chair); 
Dr. Pepper Bottling Co. v. Rainboldt, 66 S.W.2d 496, 501 (Tex. Civ. 
App.--Waco 1933), rev'd on other grounds, Schroeder v. 
Rainboldt, 97 S.W.2d 679 (Tex. 1936) (plaintiff's bladder was permanently 
injured and she would be unable to have children); see also Mo. Pac. R.R. 
Co. v. Handley, 341 S.W.2d 203, 205 (Tex. Civ. App.--San Antonio 1960, no 
writ). 
32. See, e.g., Schindler Elevator Corp. v. 
Anderson, 78 S.W.3d 392, 412-13 (Tex. App.--Houston [14th Dist.] 2001, 
judgm't vacated) (holding that temporary injuries supported award for past 
physical impairment, but that permanent injuries supported award for future 
physical impairment). 
33. 44 S.W.3d 558, 561-62 (Tex. 2001). 
34. 84 S.W. 1052 (Tex. 1905). 
35. 60 S.W. 314, 316 (Tex. Civ. App. 1901, no writ). 
36. Id. 
37. 66 S.W.2d at 497. 
38. Id. at 501. 
39. Id. 
40. Id. 
41. Id. 
42. See, e.g., Mo. Pac. R.R. Co. v. Lane, 
720 S.W.2d 830, 834 (Tex. App.--Texarkana 1986, writ denied); Spohn Hosp. v. 
Mayer, 72 S.W.3d 52, 67 (Tex. App.-Corpus Christi 2001), rev'd on other 
grounds, 104 S.W.3d 878 (Tex. 2003); Brookshire Bros., Inc. v. 
Wagnon, 979 S.W.2d 343, 353 (Tex. App-Tyler 1998, pet. denied). 
43. Akers v. Kelley Co., 219 Cal. Rptr. 513, 526 
(Cal. Ct. App. 1985); Loth v. Truck-A-Way Corp., 70 Cal. Rptr. 2d 571, 
575 (Cal. Ct. App. 1998); Knight v. Lord, 648 N.E.2d 617, 623 
(Ill. App. Ct. 1995); Sena v. N.M. State Police, 892 P.2d 604, 610-11 
(N.M. Ct. App. 1995) (noting that loss of enjoyment of life is a factor to be 
considered in relation to other elements of damage such as disability, pain, 
suffering, and mental anguish); Jones v. Chicago Osteopathic Hosp., 
738 N.E.2d 542, 554-55 (Ill. App. Ct. 2000); Frito-Lay, Inc. v. 
Cloud, 569 N.E.2d 983, 989 (Ind. Ct. App. 1991); Poyzer v. McGraw, 
360 N.W.2d 748, 753 (Iowa 1985); Gregory v. Carey, 791 P.2d 1329, 1336 
(Kan. 1990); Adams v. Miller, 908 S.W.2d 112, 116 (Ky. 1995) (holding 
that hedonic value of life "is already recoverable in the recognized category of 
mental suffering"); Anunti v. Payette, 268 N.W.2d 52, 55 (Minn. 1978); 
Anderson v. Neb. Dep't of Soc. Servs., 572 N.W.2d 362, 367 (Neb. 1998) 
(holding that loss of enjoyment of life may properly be considered as it relates 
to pain and suffering and to disability, but it is improper to treat it as a 
separate category of nonpecuniary damages); Bennett v. Lembo, 761 A.2d 
494, 498 (N.H. 2000); Wilt v. Buracker, 443 S.E.2d 196, 207 (W. Va. 
1993); but see Ogden v. J.M. Steel Erecting, Inc., 31 P.3d 806, 813 
(Ariz. Ct. App. 2001); Preston v. Dupont, 35 P.3d 433, 441 (Colo. 
2001); Montalvo v. Lapez, 884 P.2d 345, 364 (Haw. 1994); Curtis v. 
Porter, 784 A.2d 18, 26 (Me. 2001); Kan. City S. Ry. Co. v. 
Johnson, 798 So. 2d 374, 380-81 (Miss. 2001); Moscatello v. Univ. of 
Med. and Dentistry, 776 A.2d 874, 881 (N.J. Super. Ct. App. Div. 2001); 
Boan v. Blackwell, 541 S.E.2d 242, 244 (S.C. 2001); Overstreet v. 
Shoney's, Inc., 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999); Kirk v. Wash. 
State Univ., 746 P.2d 285, 292-93 (Wash. 1987); Mariner v. 
Marsden, 610 P.2d 6, 12 (Wyo. 1980). 
44. 720 S.W.2d at 834. 
45. 813 S.W.2d 658, 674 (Tex. App.--Texarkana 1991, writ 
denied) (stating that loss of enjoyment of life "may be treated as a factor in 
determining damages in general or for pain and suffering"). 
46. 72 S.W.3d at 67. 
47. 979 S.W.2d at 353. 
48. 956 S.W.2d 590, 599 (Tex. App.--Tyler 1997), rev'd 
on other grounds, 1 S.W.3d 91 (Tex. 1999) (reversing award of attorney's 
fees). 
49. Schindler Elevator Corp. v. Anderson, 78 
S.W.3d 392, 412 (Tex. App.--Houston [14th Dist.] 2001, judgm't vacated). 
50. Santa Rosa Med. Ctr. v. Robinson, 560 S.W.2d 
751, 762 (Tex. Civ. App.--San Antonio 1977, no writ) (Cadena, C.J., dissenting). 

51. See generally Boan v. Blackwell, 541 S.E.2d 
242, 244-45 (S.C. 2001) (holding that, when supported by the evidence, a jury 
shall be charged that the injured person is entitled to recover damages for loss 
of enjoyment of life); Kan. City S. Ry. Co., Inc. v. Johnson, 798 So. 
2d 374, 380 (Miss. 2001) (holding that "loss of enjoyment of life should be 
fully compensated and should be considered on its own merits as a separate 
element of damages, not as a part of one's pain and suffering"); Ogden v. 
J.M. Steel Erecting, Inc., 31 P.3d 806, 813 (Ariz. Ct. App. 2001) (holding 
that a "separate charge on hedonic damages will minimize the risk that a jury 
will under- or over-compensate an injured person for her noneconomic losses"); 
Jones v. Chicago Osteopathic Hosp., 738 N.E.2d 542, 554 (Ill. App. Ct. 
2000) (stating that "'loss of normal life' has almost universally been 
interpreted as a component of disability which compensates for a change in the 
plaintiff's lifestyle"); Knepper v. Robin, 745 So. 2d 1248, 1257 (La. 
Ct. App. 1999) (holding that trial court erred in "depriv[ing] the jurors of the 
opportunity to consider the distinctions between loss of enjoyment of life and 
the general damages of pain and suffering"); Loth v. Truck-A-Way Corp., 
70 Cal. Rptr. 2d 571, 575 (Cal. Ct. App. 1998) (surveying decisions and holding 
that "[l]oss of enjoyment of life, however, is only one component of a general 
damage award for pain and suffering [but] is not calculated as a separate 
award"); Smallwood v. Bradford, 720 A.2d 586, 592-95 (Md. 1998) 
(examining authorities, concluding that loss of enjoyment of life was not 
recoverable when decedent was almost instantly killed in a car crash); Adams 
v. Miller, 908 S.W.2d 112, 116 (Ky. 1995) (holding that hedonic value of 
life "is already recoverable in the recognized category of mental suffering"); 
Knight v. Lord, 648 N.E.2d 617, 623 (Ill. App. Ct. 1995) (noting that 
loss of enjoyment of life is a component of disability damages, but the term 
"loss of a normal life" is less likely to be misunderstood than "disability"); 
Fantozzi v. Sandusky Cement Prods. Co., 597 N.E.2d 474, 481-87 (Ohio 
1992) (surveying decisions regarding loss of enjoyment of life and holding that 
"permitting a separate interrogatory and jury finding on this damage, would help 
the jury understand exactly what claimed damages it is addressing"); Eyoma 
v. Falco, 589 A.2d 653, 658 (N.J. Super. Ct. App. Div. 1991) (holding that 
loss of enjoyment of life is a separate and distinct item of damages); 
Frito-Lay, Inc. v. Cloud, 569 N.E.2d 983, 989 (Ind. Ct. App. 1991) 
(holding it "is error to instruct the jury on the loss of quality and enjoyment 
of life as an element of damages separate from other elements of damage, such as 
pain and suffering or permanency of injury"); Gregory v. Carey, 791 
P.2d 1329, 1335-36 (Kan. 1990) (discussing the various decisions that have 
considered loss of enjoyment of life and concluding that it is "inextricably 
included within the more traditional areas of damages for disability and pain 
and suffering"); Nussbaum v. Gibstein, 536 N.E.2d 618, 619 (N.Y. 1989) 
(holding that "loss of enjoyment of life is not a separate element of damages 
deserving a distinct award but is, instead, only a factor to be considered by 
the jury in assessing damages for conscious pain and suffering"); McDougald 
v. Garber, 536 N.E.2d 372, 376-77 (N.Y. 1989) (surveying authorities and 
holding that loss of enjoyment of life is a permissible factor in assessing pain 
and suffering, but no purpose would be served by having the jury make separate 
awards); see generally Hermes, Loss of Enjoyment of 
Life-Duplication of Damages Versus Full Compensation, 63 N.D. L. Rev. 561 
(1987); Annotation, Loss of Enjoyment of Life as Distinct Element or Factor 
in Awarding Damages for Bodily Injury, 34 A.L.R.4th 293 (1984); Cramer, 
Comment, Loss of Enjoyment of Life as a Separate Element of Damages, 12 
Pac. L. J. 965 (1981). 
52. See, e.g., Green v. Baldree, 497 S.W.2d 342, 
350 (Tex. Civ. App.--Houston [14th Dist.] 1973, no writ) (holding that "[t]he 
plaintiff must sustain the burden of proving that the effect of his physical 
impairment extends beyond any impediment to his earning capacity and beyond any 
pain and suffering to the extent that it produces a separate and distinct loss 
that is substantial and for which he should be compensated"). 
53. 29 S.W.3d at 928 (quoting Blankenship v. 
Mirick, 984 S.W.2d 771, 777 (Tex. App.--Waco 1999, pet. denied)). 
54. See, e.g., Rosenboom Mach. & Tool, 
Inc. v. Machala, 995 S.W.2d 817, 825 (Tex. App.--Houston [1st 
Dist.] 1999, pet. denied); Green, 497 S.W.2d at 350 (commenting that 
when physical impairment is submitted as a separate element, "the defendant 
would be entitled, on request, to have the court submit a special instruction 
that would be calculated to prevent the jury from allowing a double recovery"); 
see also Robinson v. Minick, 755 S.W.2d 890, 894-95 (Tex. 
App.--Houston [1st Dist.] 1988, writ denied) (stating that limiting instruction 
might have prevented jury from considering past physical impairment in making 
its award for other elements). 
55. 567 S.W.2d 604 (Tex. Civ. App.--Beaumont), writ 
ref'd n.r.e., 571 S.W.2d 867 (Tex. 1978). 
56. Id. at 608. 
57. Texas Pattern Jury Charges PJC 8.2 (2000 ed.). 
58. See, e.g., Thomas v. Oldham, 895 
S.W.2d 352, 360 (Tex. 1995); Price v. Short, 931 S.W.2d 677, 688 (Tex. 
App.--Dallas 1996, no writ); Greater Houston Transp., Inc. v. Zrubeck, 
850 S.W.2d 579, 589 (Tex. App.--Corpus Christi 1993, writ denied). 
59. See Price, 931 S.W.2d at 688. 
60. Greater Houston Transp., Inc., 850 S.W.2d at 
589. 
61. See Gillette Motor Transp. Co. v. 
Whitfield, 200 S.W.2d 624, 626 (Tex. 1947); see also In re K.R., 
63 S.W.3d 796, 800-01 (Tex. 2001); Turner, Collie, & Braden, Inc. v. 
Brookhollow, Inc., 642 S.W.2d 160, 167 (Tex. 1982); Daugherty v. S. 
Pac. Transp. Co., 772 S.W.2d 81, 83 (Tex. 1989). 
62. Kan. City S. Ry. Co. v. Johnson, 798 So. 2d 
374, 381 (Miss. 2001) (distinguishing loss of enjoyment of life from pain and 
suffering, noting that "[a] permanent injury differs from pain and suffering in 
that it is an injury from which the plaintiff cannot completely recover"); 
Ogden v. J.M. Steel Erecting, Inc., 31 P.3d 806, 813 (Ariz. 
Ct. App. 2001) (defining loss of enjoyment of life as "damages [that] compensate 
the individual not only for the subjective knowledge that one can no longer 
enjoy all of life's pursuits, but also for the objective loss of the ability to 
engage in these activities"); Bennett v. Lembo, 761 A.2d 494, 498 (N.H. 
2000) (holding that damages for loss of enjoyment of life are a component of 
permanent impairment); Sena v. N.M. State Police, 892 P.2d 604, 611 
(N.M. Ct. App. 1995) (holding that "New Mexico permits proof of nonpecuniary 
damages resulting from the loss of enjoyment of life in tort actions involving 
permanent injuries"); Laing v. Am. Honda Motor Co., Inc., 628 So. 2d 
196, 204 (La. Ct. App. 1993) (finding evidence sufficient to support award for 
hedonic damages when, seven years after the accident, plaintiff could not feed 
himself or enjoy writing or cooking, and required assistance to perform basic 
tasks); Wilt v. Buracker, 443 S.E.2d 196, 200 (W. Va. 1993) (stating 
that "damages for the loss of enjoyment of life are a valid element of recovery 
when a plaintiff has suffered a permanent injury") (emphasis omitted); 
Fantozzi v. Sandusky Cement Prods. Co., 597 N.E.2d 474, 486-87 (Ohio 
1992) (holding that a jury should be instructed that it may award damages for an 
inability to perform usual activities of life or usual activities that give 
pleasure if it finds a permanent disability); Eyoma v. Falco, 589 A.2d 
653, 662 (N.J. Super. Ct. App. Div. 1991) (holding that loss of enjoyment of 
life is an element of the permanent injury a plaintiff has suffered); Kirk 
v. Wash. State Univ., 746 P.2d 285, 292-93 (Wash. 1987) (holding that trial 
court did not err in allowing jury to consider loss of enjoyment of life when 
injury to plaintiff's elbow was permanent and she could not become a 
professional dancer); Gowdy v. United States, 271 F. Supp. 733, 751 (W. 
D. Mich. 1967) (noting in reviewing evidence of loss of enjoyment of life that 
the plaintiff's impairment was permanent). 
63. Smith v. City of Evanston, 631 N.E.2d 1269, 
1279 (Ill. App. Ct. 1994) (noting that "loss of a normal life" should be 
"defined as plaintiff's 'diminished ability to enjoy life that the plaintiff has 
experienced,' which should include plaintiff's temporary or permanent inability 
to pursue the pleasurable aspects of life, such as recreation or hobbies") 
(citation omitted). 
64. 44 S.W.3d 558 (Tex. 2001). 
65. Berger v. Weber, 303 N.W.2d 424, 436 (Mich. 
1981). 
66. Am. Nat'l Watermattress Corp. v. Manville, 642 
P.2d 1330, 1341 (Alaska 1982). 
67. 755 S.W.2d 890 (Tex. App.--Houston [1st Dist.] 1988, 
writ denied). 
68. 29 S.W.3d at 929. 
69. 755 S.W.2d at 894. 
70. 29 S.W.3d at 929. 
71. 725 S.W.2d 323, 325 (Tex. App.--Corpus Christi 1986, 
writ ref'd n.r.e.). 
72. 597 S.W.2d 495, 495-96 (Tex. Civ. App.--Beaumont 1980, 
writ ref'd n.r.e.). 
73. 725 S.W.2d at 325; see also Platt, 597 S.W.2d 
at 495-96 (holding that jury was not required to award damages for physical 
impairment in addition to damages for past physical and mental anguish even 
though plaintiff severely injured his knee, surgery was required, and there was 
a 30% functional loss). 
74. 822 S.W.2d 223, 230 (Tex. App.--Dallas 1991, writ 
denied). 
75. Id. at 231; see also Waltrip v. Bilbon 
Corp., 38 S.W.3d 873, 881-82 (Tex. App.--Beaumont 2001, pet. denied) 
(holding that $100 award for past physical pain and mental anguish was not 
against great weight and preponderance of the evidence); Srite v. 
Owens-Ill., Inc., 870 S.W.2d 556, 563 (Tex. App.--Houston [1st Dist.] 
1993), rev'd on other grounds, Owens-Ill., Inc. v. Burt, 897 
S.W.2d 765 (Tex. 1995) (reversing only on pre-judgment interest). 
76. 884 S.W.2d 811, 820 (Tex. App.--Dallas 1994, writ 
denied). 
77. Id. at 819. 
78. Id. at 820. 
79. 715 S.W.2d 629, 635 (Tex. 1986). 
80. Tex. R. Civ. P. 277.